**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-2660
_____

ALAN M. BECKNELL,
individually and on behalf of all others similarly situated,

Appellant

v.

SEVERANCE PAY PLAN OF JOHNSON & JOHNSON AND U.S. AFFILIATED
COMPANIES; PENSION COMMITTEE OF JOHNSON & JOHNSON
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 3-13-cv-04622)
District Judge: Honorable Freda L. Wolfson
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
March 18, 2016

Before: CHAGARES, RESTREPO and VAN ANTWERPEN, <u>Circuit Judges</u>.

(Filed: March 21, 2016)

_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7, does not constitute binding precedent.

VAN ANTWERPEN, *Circuit Judge*.

Appellant Alan M. Becknell appeals the final decision of the U.S. District Court for the District of New Jersey granting summary judgment in favor of Appellee Severance Pay Plan of Johnson & Johnson and Affiliated U.S. Companies ("J & J"). For the following reasons, we will affirm the decision of the District Court.

## I.      Background

### A.      *Factual History*

Viewing the record in a light most favorable to the nonmovant, Becknell, the facts are as follows. Becknell was employed as an engineer by Ethicon, Inc., a J & J subsidiary, beginning in August 1977. (App. 355). On October 16, 2007, Becknell qualified for and began to receive short-term disability benefits through a J & J sponsored plan. (*Id.* at 4). On April 15, 2008, when Becknell exhausted his short-term disability, he qualified for and began to receive long-term disability benefits through another J & J sponsored plan. (*Id.* at 355). Becknell continued to receive these benefits until they ran out in June 2009.[1] (*Id.* at 488). Becknell never returned to work after going on leave in October 2007. (*Id.*).

More than three years after exhausting his long-term disability benefits, on October 25, 2012, Becknell sent a letter to J & J requesting an application for severance

---

[1] Becknell applied for an extension of his long-term disability benefits, which J & J denied. (App. at 4). Becknell appealed the denial, which the Fifth Circuit affirmed, holding that the plan administrator's denial was not an abuse of discretion. *Becknell v. Long Term Disability Plan for Johnson & Johnson and Affiliated Cos.*, 510 F. App'x 317, 318 (5th Cir. 2013) (per curiam).

benefits. (*Id.* at 238). When Becknell did not receive a response, his counsel, Gregory Paul, sent a follow-up letter. (*Id.* at 381). William Wilkinson, Manager of Global Benefits for J & J, responded to Becknell's request in a February 4, 2013 letter which indicated that Becknell did not qualify for severance benefits. (*Id.* at 285–87). The letter stated that Becknell did not qualify because his termination did not result from one of the "Severance Events" enumerated in the Severance Pay Plan of Johnson & Johnson and U.S. Affiliated Companies ("Plan"). (*Id.* at 286). Moreover, the letter indicated that Becknell ceased to be eligible for benefits on April 15, 2008 when he began receiving long-term disability benefits because he was unable to work, with or without reasonable accommodation. (*Id.*). Through his counsel, Becknell appealed the denial in a letter sent via certified mail on March 4, 2013. (*Id.* at 387–93). A return receipt shows that the letter was received on March 8th. (*Id.* at 390). J & J maintains that the Benefits Claims Committee ("BCC"), the group tasked with reviewing appeals, did not learn of Becknell's administrative appeal until it received the complaint filed in the instant action in August 2013. (*Id.* at 201, 298).[2]

In a letter sent on December 13, 2013, the BCC upheld "the determination that Mr. Becknell is not eligible for benefits under the Severance Pay Plan." [3] (*Id.* at 298–300).

---

[2] While the return receipt shows that an individual at J & J signed for the letter, Wilkinson stated that he did not recognize the initials. (App. 201–02). Wilkinson asserts that he first received Becknell's March 4th appeal letter from Becknell's counsel on August 19, 2013 after the complaint was served. (*Id.* at 201).

[3] J & J sent a letter to Becknell's counsel on October 16, 2013, indicating that it required an additional sixty days to issue a decision to Becknell, an extension from the standard sixty-day timeline the Plan provides. (*Id.* at 296). J & J began counting from

3

The BCC rejected Becknell's argument that the Plan language regarding "inability to meet the requirements of his position" covers termination because an employee moves to long-term disability, since "the inability has a parenthetical requirement." (*Id.* at 300). The parenthetical states that the inability to meet the requirements of an employee's position is "determined by management of the U.S. Affiliated Company employing the Eligible Employee at the time of termination." (*Id.*). Accordingly, the BCC determined that "employment ending at the end of the short-term disability period is not recognized by management as meeting this requirement." (*Id.*).

### B.    *Procedural History*

Becknell commenced this putative class action by filing a complaint seeking severance benefits under the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B). (App. 1–10). J & J moved to dismiss under Federal Rule of Civil Procedure 12(b)(6) because Becknell filed his initial claim with J & J after the Plan deadline of 180-days following the severance event. (*Id.* at 41–50). The District Court denied the motion, finding that J & J waived this defense because it did not raise it in the February 4, 2013 initial denial. (*Id.* at 75–87). J & J answered Becknell's complaint and moved for summary judgment. (*Id.* at 156–86). The District Court granted J & J's motion, rendering moot Becknell's previously submitted motion for class certification. (*Id.* at 485–500). This timely appeal followed. (*Id.* at 501–02).

---

when it received Becknell's appeal letter on August 19, 2013. (*Id.*). As a result, the December 11th denial of Becknell's administrative appeal was within the 120-day timeline from when J & J stated it received Becknell's March 4th letter.

4

*C.     Plan Provisions*

The Plan is an ERISA welfare benefit plan. (*Id.* at 218). The governing documents state that the "sole purpose for payment of benefits under this Plan is to assist Participants when they are unemployed during the transition period when they are attempting to secure a new position." (*Id.* at 205). The Plan enumerates four "Severance Events," upon the occurrence of which, "[a]n Eligible Employee may be eligible for the benefits provided in [the Plan]." [4] (*Id.* at 211). Of relevance to the instant action, one of the severance events is "an Eligible Employee's inability to meet the requirements of his or her position (as determined by management of the U.S. Affiliated Company employing the Eligible Employee at the time of termination)." (*Id.*).

The Plan affords the Plan Administrator, the Pension Committee of Johnson & Johnson, and its designees sole discretion to interpret the Plan and eligibility for benefits.[5] (*Id.* at 206, 212, 214, 218–19). Article 4.1(b) of the Plan provides that "[a]n Eligible Employee is not eligible for the benefits provided in [the Plan] if his or her employment is terminated as a result of any one of [six enumerated] events." (*Id.* at 211). Invoking the discretion of the Plan Administrator, one of the six enumerated events provides that an eligible employee is not eligible for benefits "for such other reasons as

---

[4] The Plan defines an "Eligible Employee," in relevant part, as "a regular, full-time or part-time salaried or hourly employee of a U.S. Affiliated Company." (App. 206).

[5] The Plan allows the Plan Administrator "[t]o delegate its authorities and discretion hereunder," which include "the sole and complete discretion to construe and interpret the Plan, to decide all questions concerning [*inter alia*], eligibility for participation and entitlement to benefits." (*Id.* at 218–19).

the Pension Committee, in its sole discretion, determines to be cause for denying or discontinuing benefits under this Plan." (*Id.* at 212).

##### D.     *Administrative Claim and Appeal Process*

To assert a claim for Plan benefits, "[a]n Eligible Employee (or his or her duly authorized representative) . . . may file with the Claims Administrator a signed written Claim that is timely." (*Id.* at 220). A claim is timely if it is filed "no later than one hundred-eighty (180) days after the date on which payments under the Plan were discontinued or reduced." (*Id.*). If an initial claim is denied, an eligible employee has sixty days to "submit a written Appeal to the [BCC] for review of the denial." (*Id.*). The BCC then has sixty days from when the appeal is filed to "issue a written decision to the Eligible Employee," which may be extended to 120-days under special circumstances. (*Id.* at 221). As the duly authorized delegates of the Plan Administrator, the Claims Administrator and the BCC have discretion to determine eligibility, as well as to interpret or construe the Plan. (*Id.* at 206, 214, 218–19).

Prior to Becknell's claim for severance benefits, the BCC twice addressed whether severance events, as defined by the Plan, include termination of employment by transition to long-term disability status. (*Id.* at 276–80, 282–83).  In both instances, the BCC determined that the individual's employment was terminated when the employee's short-term disability ended, and he or she moved to long-term disability. (*Id.*). Mr. Wilkinson stated that he reviewed these prior BCC decisions in addressing Becknell's initial claim. (*Id.* at 200).

6

## II.     Discussion[6]

### A.     Standard of Review

We review a district court's determination of the appropriate standard to apply to review an ERISA plan administrator's decision *de novo*. *Viera v. Life Ins. Co. of N. Am.*, 642 F.3d 407, 413 (3d Cir. 2011) (citing *Grupo Protexa, S.A. v. All Am. Marine Slip*, 20 F.3d 1224, 1231 (3d Cir. 1994)). We review a grant of summary judgment *de novo*, applying the same standard as the district court. *Id.* Accordingly, "[w]e may affirm the order when the moving party is entitled to judgment as a matter of law, with the facts reviewed in the light most favorable to the non-moving party." *Miller v. Am. Airlines, Inc.*, 632 F.3d 837, 844 (3d Cir. 2011) (alteration in original) (quoting *Shook v. Avaya Inc.*, 625 F.3d 69, 72 (3d Cir. 2010)) (internal quotation marks omitted).

### B.     Analysis

Becknell asserts that the District Court erred in reviewing J & J's denial of his claim under the deferential abuse of discretion standard.[7] (Appellant's Br. 11). The failure of the BCC to issue a written decision within the sixty days the Plan requires rendered his claim "deemed denied," Becknell argues, which this Circuit reviews *de*

---

[6] The District Court had jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e)(1). We have jurisdiction to review final orders of a district court pursuant to 28 U.S.C. § 1291.

[7] We have stated that "[i]n the ERISA context, the arbitrary and capricious and abuse of discretion standards of review are essentially identical." *Fleisher v. Standard Ins. Co.*, 679 F.3d 116, 120–21 & n.2 (3d Cir. 2012) (alteration in original) (quoting *Miller v. Am. Airlines, Inc.*, 632 F.3d 837, 844 n.2 (3d Cir. 2011)) (internal quotation marks omitted). "Accordingly, we use the phrases 'abuse of discretion' and 'arbitrary and capricious' interchangeably when referring to the deferential standard of review applicable in this case." *Fleisher*, 679 F.3d at 121 n.2.

*novo*. (*Id.* at 13–16). Under the *de novo* standard, Becknell claims he would have prevailed since ambiguity in an ERISA plan is construed in favor of the insured. (*Id.* at 20). Because the Plan language underlying the Plan Administrator's determination is unambiguous, and the Plan Administrator's interpretation was within its discretion and consistent with the purpose of the Plan, Becknell's claim fails under either standard of review.

### 1.    Standard of Review of Benefit Decisions Under ERISA

Where an ERISA plan grants the plan administrator discretionary authority to determine eligibility for benefits, we will uphold the administrator's decision unless it is arbitrary and capricious. *Fleisher v. Standard Ins. Co.*, 679 F.3d 116, 120–21 (3d Cir. 2012) (quoting *Orvosh v. Program of Grp. Ins. for Salaried Emps. of Vokswagen of Am., Inc.*, 222 F.3d 123, 129 (3d Cir. 2000)). We have held that "[a]n administrator's decision is arbitrary and capricious if it is without reason, unsupported by substantial evidence or erroneous as a matter of law." *Miller*, 632 F.3d at 845 (quoting *Abnathya v. Hoffman-La Roche, Inc.*, 2 F.3d 40, 45 (3d Cir. 1993)) (internal quotation marks omitted). An interpretation that is "reasonably consistent with unambiguous plan language" is not arbitrary. *Fleisher*, 679 F.3d at 121 (quoting *Bill Gray Enters., Inc. Emp. Health & Welfare Plan v. Gourley*, 248 F.3d 206, 218 (3d Cir. 2001)) (internal quotation marks omitted).

The scope of review under the arbitrary and capricious standard is "narrow, and the court is not free to substitute its own judgment for that of the defendants in determining eligibility for plan benefits." *Doroshow v. Hartford Life & Accident Ins. Co.*,

8

574 F.3d 230, 233–34 (3d Cir. 2009) (quoting *Abnathya*, 2 F.3d at 45) (internal quotation marks omitted). This approach, often referred to as *Firestone* deference, provides that "a deferential standard of review [is] appropriate when a trustee exercises discretionary powers." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111 (1989) (citing Restatement (Second) of Trusts § 187 (1959)). In the absence of the grant of discretionary authority to a plan administrator, courts are to review a plan administrator's decision *de novo*. *Id.* at 115.

In subsequent decisions, the U.S. Supreme Court has affirmed *Firestone* deference, while articulating how a grant of discretion to plan administrators impacts the standard of review. Addressing the different contexts and circumstances in which benefit determinations arise, in *Metropolitan Life Insurance v. Glenn*, the Court clarified how lower courts should review claims in which a plan administrator has a potential conflict of interest. 554 U.S. 105, 115–17 (2008). *Glenn* held that an administrator's potential conflict of interest does not change the standard of review from deferential to *de novo*. Rather, trust law requires courts to "take account of several different considerations[,] of which a conflict of interest is one." *Id.* at 117. Interpreting *Glenn*, we "apply a deferential abuse of discretion standard of review across the board and consider any conflict of interest as one of several factors in considering whether the administrator or the fiduciary abused its discretion." *Estate of Schwing v. Lilly Health Plan*, 562 F.3d 522, 525 (3d Cir. 2009) (citing *Glenn*, 554 U.S. at 115).

The Supreme Court again affirmed deferential review of decisions by administrators granted discretion to construe and interpret a plan and its terms in

9

*Conkright v. Frommert*. 559 U.S. 506, 517 (2010). *Conkright* held that *Firestone* deference applies to a plan administrator's interpretation, despite a previous, related, unreasonable interpretation. *Id.* at 521–22. The Court underscored the importance of deference in ERISA cases, stating that "[i]f, as we held in *Glenn*, a systemic conflict of interest does not strip a plan administrator of deference . . . it is difficult to see why a single honest mistake would require a different result." *Id.* at 513 (citations omitted). Expressing concern that "unexpected and inaccurate plan interpretations . . . might result from *de novo* judicial review," the Court stated that deference is necessary to protect "the careful balancing on which ERISA is based" and to "serve[] the interest of uniformity." *Id.* at 517 (internal quotation marks omitted).

We have reviewed a denial of benefits *de novo* where the plan administrator "never made any effort to analyze appellants' claims[,] much less to advise them of what that analysis disclosed until after litigation was filed." *Gritzer v. CBS, Inc.*, 275 F.3d 291, 295 (3d Cir. 2002). In *Gritzer v. CBS*, after multiple inquiries regarding eligibility for pension plan benefits went unanswered, employees filed a claim letter with the plan administrator. *Id.* at 294. The administrator failed to issue a decision within the ninety days the plan required, and the employees filed suit. *Id.* Reviewing *de novo*, we upheld the denial based on unambiguous plan language which conferred discretion to the plan administrator as to which benefits, if any, to extend to employees. *Id.* at 298–99. *De novo* review is appropriate, when, as in *Gritzer*, "there simply is no analysis or reasoning to which the Court may defer." *Id.* at 296 (internal quotation marks omitted).

2.      Severance Benefits at Issue

10

Reviewing the denial of Becknell's claim under *Firestone* deference, the District Court found the "Claim[s] Administrator's interpretation and application of the Severance Plan terms . . . consistent with the goals of the Plan and not arbitrary and capricious." (App. 495). The Court rejected Becknell's contention that *Gritzer* controls and mandates *de novo* review in light of the BCC's late decision. (*Id.* at 492–93). The District Court noted that the instant action and *Gritzer* are factually distinct; while the plan administrator failed to respond at all in *Gritzer,* here, the "untimely decision" "at the second level of appeal" followed the Claims Administrator's initial, timely decision, and "provid[ed] the reasons for denying Plaintiff's severance request."[8] (*Id.* at 492–93). The BCC's decision, while late, "provided reasons for the denial which mirrored the Claims Administrator's determination." (*Id.* at 493).

It is undisputed by the parties that the Plan confers discretionary authority to the Plan Administrator and its delegates to determine eligibility for benefits. The only point of contention is the standard of review for the BCC's denial of Becknell's benefits claim. *See* (Appellant's Br. 10); (Appellee's Br. 14).

Relying primarily on our decision in *Gritzer*, Becknell characterizes his claim as "deemed denied" because of J & J's failure to issue a timely decision to his administrative appeal, as required by both ERISA regulations and the Plan. (Appellant's

---

[8] The Plan provides that "[t]he Claims Administrator shall notify the Eligible Employee of its decision within ninety (90) days after receipt of a Claim or, if special circumstances exist, within one hundred-eighty (180) days of receipt of the Claim." (App. 220). Becknell does not challenge the Claims Administrator's initial denial as late, and it was within the 180 days provided for at the upper end of the timeline. (Appellant's Br. 7– 9). Accordingly, for the purposes of this analysis, we treat the denial as timely.

Br. 13) (citing 29 C.F.R. § 2560.503-1); *see* (App. 221). By issuing a decision outside the sixty-day timeline, Becknell asserts the Plan Administrator "was not acting within the discretion provided by the Plan." (Appellant's Br. 14) (quoting *LaAsmar v. Phelps Dodge Corp. Life*, *Accidental Death & Dismemberment & Dependent Life Ins. Plan*, 605 F.3d 789, 799 (10th Cir. 2010)) (internal quotation marks omitted). Becknell contends that our statement in *Gritzer*, that where a plan administrator "fails to act or to exercise . . . discretion, *de novo* review is appropriate," applies. (*Id.* at 16) (quoting 275 F.3d at 296). Becknell maintains that in factually distinguishing the instant action from *Gritzer*, the District Court "misread" the latter case, since there is "no meaningful distinction between the facts." (Appellant's Br. 17–18). Under *de novo* review, Becknell contends his claim would prevail because *contra proferentem* requires any ambiguity be construed against the drafter.[9] (*Id.* at 20–21).

J & J counters that the BCC's delayed decision alone does not transform the standard of review from arbitrary and capricious to *de novo*, yet maintains that even under *de novo* review the Plan's interpretation should be upheld. (Appellee's Br. 12–14). J & J contends that Becknell's reliance on *Gritzer* is inappropriate for the same factual distinction the District Court cited, as well as the existence of the Plan Administrator's two interpretations prior to Becknell's claim. (*Id.* at 25–31). Further, through *Glenn* and

---

[9] Becknell provides an argument as to why ERISA's substantial compliance rule, which "[t]he Trial Court didn't expressly mention and J & J didn't urge the Court to adopt" does not relax timeliness requirements. (Appellant's Br. 18). Since Becknell did not raise this argument below, J & J does not mention it on appeal, and there is no indication that the District Court considered it in rendering its decision, this issue is waived and we need not discuss it.

*Conkright*, J & J indicates that the Supreme Court has affirmed *Firestone* deference in the context of conflicts of interest and honest mistakes on the part of plan administrators. (*Id.* at 21–25). J & J also revisits the timeliness argument raised in its motion to dismiss, asserting that this Court, and many of our sister circuits, have declined to find waiver of plan defenses under ERISA as a matter of law. (*Id.* at 45–47).

The Plan Administrator's actions in the present case do not constitute a failure to exercise discretion, as warranted *de novo* review in our decision in *Gritzer.* 275 F.3d at 296. As the District Court aptly noted, the denial in the instant action is fundamentally different from that in *Gritzer*, in that Becknell's claim was not "deemed denied."[10] *See* (App. 492). Rather, Becknell's initial claim was timely denied, in a letter setting forth a decision consistent with prior interpretations of the Plan, on which J & J indicated it relied in the rendering its decision. *See* (App. 276–79, 282–83, 285–87). Without a failure to exercise discretion, trust principles and the "careful balanc[e]" on which ERISA is built, require that we afford deference to a plan administrator's interpretation of the plan it is tasked with construing. *See Conkright*, 559 U.S. at 517.

Consistent with *Glenn* and *Conkright,* the BCC's late decision to Becknell's appeal is a factor we consider in determining whether the Plan Administrator abused its discretion. *See id.* at 513 (citing *Glenn*, 554 U.S. at 115–16). It appears, and Becknell offers no evidence to the contrary, that the BCC's late decision was a simple clerical

---

[10] *Gritzer* involved a previous version of the relevant ERISA regulation regarding the sixty-day deadline, which included the "deemed denied" language. 29 C.F.R. § 2560.503-1(h) (1999). This language is absent from the current version of the regulation. 29 C.F.R. § 2560.503-1(I) (2000).

oversight by J & J. *See* (App. 201–02). While this result is not ideal in terms of promoting the interests of eligible employees under the Plan, Becknell advances no reason that the BCC's delayed response prejudiced or otherwise harmed his appeal. Unlike the appellants in *Gritzer*, Becknell received a timely denial in response to his initial request for severance benefits. *Compare Gritzer*, 275 F.3d at 294, *with* (App. 285–87). Having already received a thorough response from the Claims Administrator, which detailed the reasons for his ineligibility, Becknell was apprised of the Plan Administrator's exercise of its discretion well before he instituted the present litigation.

The BCC's delay, while inexcusable in its detraction from efficiency and the "prompt enforcement of rights under a plan," did not impair the interests *Firestone* deference promotes in fairness and uniformity of plan interpretations. *See Conkright*, 559 U.S. at 517. That the BCC's decision mirrors the Claims Administrator's denial, and relies on the same prior decisions interpreting the issue, underscores the consistency of the Plan Administrator's exercise of discretion in this matter. We do not summarily dismiss the possible impact of the BCC's tardiness in issuing its decision as both ERISA and the Plan afford two levels of review by the Plan Administrator. *See* 29 C.F.R. § 2560.503-1(f), (h); (App. 220–21). Considering this delay as one factor in our abuse of discretion review, we observe that Becknell has presented no new evidence or arguments in his appeal to challenge this interpretation, and merely restated that his termination was a severance event under the Plan. *See* (App. 387–88). To remove the deference to which this interpretation is afforded by trust principles, the governing documents, and Supreme

Court precedent would undermine the balance on which ERISA is founded. *See Conkright*, 559 U.S. at 517–18.

Looking to our sister circuits, we are satisfied that the BCC's late decision does not require departure from *Firestone* deference. Observing how circuit courts have approached this issue, the D.C. Circuit observed that "[a]lthough the Supreme Court has never suggested that the standard of review applied to ERISA administrators' benefits determinations should change because of procedural irregularities . . . . [s]ome circuits substitute *de novo* review for deferential review only when the plan administrator committed severe procedural violations." *James v. Int'l Painters & Allied Trades Indus. Pension Plan*, 738 F.3d 282, 283 (D.C. Cir. 2013) (per curiam) (citing cases from the Fifth, Eighth and Ninth Circuits, which apply *de novo* review in light of severe procedural violations). The D.C. Circuit noted that the Tenth Circuit's approach, which Becknell asks us to adopt, is an outlier in its strictness, "stripping a plan administrator of deferential review unless the irregularity is 'inconsequential.'" *Id.* (quoting *LaAsmar*, 605 F.3d at 800); *see* (Appellant's Reply Br. 2–4). In contrast, the Seventh Circuit has held that arbitrary and capricious review applies even in light of alleged procedural errors, which are factors to consider in determining if the plan administrator's interpretation was reasonable. *Weitzenkamp v. Unum Life Ins. Co. of Am.*, 661 F.3d 323, 329 n.3 (7th Cir. 2011). Applying *Firestone* deference here is consistent with the majority of our sister circuits who have weighed in on this issue, as the BCC's late decision does not rise to the level of a severe procedural violation. Becknell does not argue that the BCC's late decision was issued in bad faith or as the result of incompetence.

Even assuming, *arguendo*, that *de novo* review applies, we reach the same conclusion and affirm the Claims Administrator's and BCC's interpretation and application as consistent with the goals of the Plan. An ERISA plan should be construed as a contract, "'looking to the terms of the plan' as well as to 'other manifestations of the parties' intent.'" *US Airways, Inc. v. McCutchen*, 133 S. Ct. 1537, 1549 (2013) (quoting *Firestone*, 489 U.S. at 113). The critical question is whether Becknell's termination satisfied the requirements the Plan sets forth for severance benefits eligibility. *See Gritzer*, 275 F.3d at 297. As stated *supra*, the Plan's governing documents establish that its "sole purpose . . . is to assist Participants when they are unemployed during the transition period when they are attempting to secure a new position." (App. 205). By the terms of J & J's disability plan, under which Becknell received long-term disability benefits, an employee must meet the definition of "totally disabled," meaning that he or she is unable "to perform the Essential Functions of his or her Regular Occupation." (*Id.* at 496). Long-term disability benefits extending beyond one-year require that the employee "must be unable to perform any job . . . with or without reasonable accommodation." (*Id.*) (alteration in original) (emphasis omitted). By seeking an extension of these benefits, which J & J denied and Becknell appealed unsuccessfully to the Fifth Circuit, he asserted that he was "unable to perform any job . . . with or without reasonable accommodation." (*Id.*) (emphasis omitted). Consequently, by the very terms of the disability benefits he received and sought to continue receiving, Becknell was not "attempting to secure a new position," and therefore benefits would not serve the Plan's purpose.

16

Becknell's contention that the result would be different under *de novo* review because the doctrine of *contra proferentem* would apply is unavailing. (Appellant's Br. 20). Instead of offering an interpretation of the Plan under which he prevails, Becknell simply states that his claim would succeed since *contra proferentem* requires that "[a]ny ambiguity . . . must . . . be construed in favor of the insured." (*Id.* at 20) (alteration in original) (quoting *McDermott v. GMAC Mortg. Grp., LLC Comprehensive Welfare Benefits Plan*, 389 F. App'x 153, 156 (3d Cir. 2010)). *Gritzer*, the case on which Becknell bases much of his argument for *de novo* review, demonstrates why invoking *contra proferentem* here fails. In the instant action, as in *Gritzer*, it is undisputed that the Plan unambiguously provides the Plan Administrator discretion to interpret eligibility with respect to the provisions at issue. *See Gritzer*, 275 F.3d at 298; (App. 206, 212, 215, 218–19). Even reviewing *de novo*, in *Gritzer* we did not apply *contra proferentem* to interpret an unambiguous grant of discretion to interpret a plan in favor of the insured. *See Gritzer*, 275 F.3d at 298.[11]

## III.    Conclusion

For the foregoing reasons, we will affirm the District Court's order granting summary judgment in favor of Appellees.

---

[11] We do not reach J & J's alternative argument that Becknell's claim fails because his initial application for benefits was untimely. We need not address this since the Plan Administrator's interpretation succeeds under either standard of review.