In the

# United States Court of Appeals

## For the Seventh Circuit

No. 18-1346

DONALD FESSENDEN,

*Plaintiff-Appellant,*

*v.*

RELIANCE STANDARD LIFE INS. CO.
and ORACLE USA, INC., GROUP LONG
TERM DISABILITY PLAN,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Indiana, South Bend Division.
No. 3:15-cv-00370 — **Philip P. Simon**, *Judge.*

ARGUED OCTOBER 30, 2018 — DECIDED JUNE 25, 2019

Before WOOD, *Chief Judge,* and SYKES and BARRETT, *Circuit Judges.*

BARRETT, *Circuit Judge.* Donald Fessenden applied for long-term disability benefits through his former employer's benefits plan. After the plan administrator, Reliance Standard Life Insurance Company, denied the claim, Fessenden sub-

mitted a request for review with additional evidence supporting it. When Reliance failed to issue a decision within the timeline mandated by the regulations governing the Employee Retirement Income Security Act of 1974 (ERISA), he sought review of Reliance's decision in federal court. Eight days later, after Fessenden had already filed suit, Reliance finally issued a decision, again denying Fessenden's claim.

We must decide whether Reliance's tardiness affects the standard of review in the district court. If the decision had been timely, the court would have applied an arbitrary and capricious standard because the plan gave Reliance the discretion to administer it. When a plan administrator commits a procedural violation, however, it loses the benefit of deference and a de novo standard applies. We have recognized an exception, though, and Reliance seeks to take advantage of it: if the administrator "substantially complies" with the prescribed procedures—in other words, if the violation is relatively minor—then the court will still defer to the administrator's decision. Reliance argues that it "substantially complied" with the deadline because it was only a little bit late.

We reject Reliance's argument because we hold that the "substantial compliance" exception does not apply to blown deadlines. An administrator may be able to "substantially comply" with other procedural requirements, but a deadline is a bright line. Because Reliance violated a hard-and-fast obligation, its late decision to deny Fessenden benefits is not entitled to deference.

## I.

Fessenden worked as a Software Engineer Manager for Oracle USA until January 2008, when he stopped working

due to fatigue and severe, chronic migraine headaches. He applied for short-term disability benefits through Oracle's employee welfare benefits plan, a fully funded group insurance policy issued by Reliance. The request was approved, and Fessenden received benefits through May 11, 2008. Oracle terminated Fessenden shortly thereafter.

In March 2014, Fessenden submitted a claim to Reliance for long-term disability benefits dating back to his last day of work in 2008. His submission included medical records from 2006 to 2014, as well as statements from multiple doctors, all supporting his diagnosis of Chronic Fatigue Syndrome. Reliance denied his claim in an eleven-page letter stating the reasons for its decision and emphasizing the difficulties involved in reviewing a six-year-old claim. The letter told Fessenden how to request review of the decision and explained the timeline that would apply to Reliance's resolution of an appeal: Reliance would notify Fessenden in writing of its final decision within 45 days of the date that it received a request for review, unless special circumstances existed. In that event, Reliance would notify him of the final decision no later than 90 days from the date that it received the request. *See* 29 C.F.R. § 2560.503-1(i)(1)(i) & (i)(3)(i) (2002).

On April 24, 2015, Fessenden submitted his request for review, complete with additional medical records and physicians' statements. But he sent it to an address different from the one included in the instructions, and Reliance did not confirm receipt of it until May 8. On June 17, Reliance notified Fessenden that it needed an additional 45 days to make its determination, and on August 27, it entered its final decision denying Fessenden's claim for long-term disability benefits. The parties disagree on when exactly Reliance's 90 days were

up, but they all agree that Reliance made its final decision after the window had closed.[1]

Before the final decision issued, but after the deadline had passed, Fessenden sued Reliance and Oracle under ERISA, *see* 29 U.S.C. § 1132; 29 C.F.R. § 2560.503-1(l) (2002), maintaining that he qualified for disability benefits under the plan. Normally, the lack of a final decision would mean that Fessenden's suit was premature, because an insured must exhaust the plan's review process before taking the dispute to federal court. *See Edwards v. Briggs & Stratton Retirement Plan*, 639 F.3d 355, 360 (7th Cir. 2011). But when a plan administrator fails to follow required procedures, such as deadlines for issuing decisions, "a claimant shall be deemed to have exhausted the administrative remedies available under the plan," 29 C.F.R. § 2560.503-1(l) (2002), and can seek judicial review even if the plan's internal process has not run its course, *see Edwards*, 639 F.3d at 360.

The absence of a final decision affects more than the timing of a suit—it also affects the standard of review. When a benefit plan gives the administrator discretionary authority to determine a claimant's eligibility for benefits, we typically review the denial of benefits under an arbitrary and capricious standard. *See id.* That standard reflects deference to the administrator's exercise of discretion. *See id.*; *see also Conkright v. Frommert*, 559 U.S. 506, 517–18 (2010). But when an administrator fails to render a final decision, there is no valid exercise

_____

[1] The disagreement is primarily about the operation of the regulations' tolling provisions. For our purposes, though, the only thing that matters is that the decision was untimely. Because we hold that the "substantial compliance" standard is inapplicable to ERISA's regulatory deadlines, it doesn't matter how late it was.

of discretion to which the court can defer, and it decides de novo whether the insured is entitled to benefits. *See Trs. of Cent. States, Se. & Sw. Areas Health and Welfare Fund v. State Farm Mut. Auto. Ins. Co.*, 17 F.3d 1081, 1083 (7th Cir. 1994) ("Deferential review is appropriate only when the trust instrument allows the trustee to interpret the instrument *and when the trustee has in fact interpreted the instrument*." (emphasis added)); *see also Gritzer v. CBS, Inc.*, 275 F.3d 291, 296 (3d Cir. 2002) ("Where a trustee fails to act or to exercise his or her discretion, de novo review is appropriate because the trustee has forfeited the privilege to apply his or her discretion; it is the trustee's analysis, not his or her right to use discretion or a mere arbitrary denial, to which a court should defer.").

Here, however, Reliance did issue a final decision—it was just late in coming. Fessenden filed his suit on August 19, and Reliance denied his request for review on August 27. At that point, Fessenden sought to clarify the standard that the district court would apply in reviewing his claim. He urged the district court to ignore Reliance's August 27 decision and review his claim and supporting evidence de novo. According to Fessenden, Reliance forfeited the benefit of deference when it blew the deadline.

Reliance, on the other hand, suggested that a late decision is different from a case in which an administrator altogether fails to render a decision. *See, e.g., Gilbertson v. Allied Signal, Inc.*, 328 F.3d 625, 632 (10th Cir. 2003); *Gritzer*, 275 F.3d at 295–96. Reliance complied with its obligation to resolve Fessenden's appeal; it was just a little bit late in doing so. And because it was only a little bit late, Reliance insisted that the district court should excuse its untimeliness under the doctrine of "substantial compliance." Under that doctrine, "a

plan administrator who has violated a technical rule under ERISA … may be excused for the violation if the administrator has been substantially compliant with the requirements of ERISA." *Edwards*, 639 F.3d at 361–62. In such cases, "a plan administrator, notwithstanding [its] error, is given the benefit of deferential review of the administrator's determination about a claim under the arbitrary and capricious standard …, rather than more stringent de novo review." *Id.* at 362.

Fessenden argued that the timing regulation precluded application of the substantial compliance exception; that Reliance had not substantially complied with the deadline in any event; and that even if Reliance had substantially complied, its decision to deny him benefits was arbitrary and capricious. The district court sided with Reliance on all three issues and entered summary judgment in its favor.

## II.

Fessenden suggests that we abandon the substantial compliance exception altogether. The exception is judge-made. *See Burns v. Orthotek, Inc. Employees' Pension Plan & Tr.*, 657 F.3d 571, 575 (7th Cir. 2011) ("The concept of substantial compliance is part of the body of federal common law that the courts have developed for issues on which ERISA does not speak directly." (quoting *Davis v. Combes*, 294 F.3d 931, 940 (7th Cir. 2002)). As a common-law doctrine, it cannot override regulations that ERISA has authorized the Department of Labor to adopt. And although both the statute and regulations were once silent about the effect of minor procedural violations on the standard of review, Fessenden claims that this changed in 2002, when an amendment adding a provision to specifically address "failure to establish and follow reasonable claims procedures" became effective:

> In the case of the failure of a plan to establish or follow claims procedures consistent with the requirements of this section, a claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under section 502(a) of the Act on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim.

29 C.F.R. § 2560.503-1(l) (2002).[2] While this provision does not explicitly discuss the relative severity of violations—or corresponding standards of review—Fessenden points to the regulations' preamble, which provides that "[t]he Department's intentions in including [subsection (l)] in the proposal were to clarify that the procedural minimums of the regulation are essential to procedural fairness and that a decision made in the absence of the mandated procedural protections should not be entitled to any judicial deference." ERISA Rules and Regulations for Administration and Enforcement; Claims Procedures, 65 Fed. Reg. 70246, 70255 (Nov. 21, 2000). According to Fessenden, this is authoritative evidence that subsection (l) mandates the loss of judicial deference to plan administrators for *any* procedural violation. In other words, Fessenden says, the 2002 version of the regulation makes clear that the substantial compliance exception no longer applies.

---

[2] The regulation was amended in 2000, but the amendments apply only to claims filed on or after January 1, 2002. *See* 65 Fed. Reg. 70265, 70271 (Nov. 21, 2000).

Fessenden invokes *Halo v. Yale Health Plan* to support his interpretation. *See* 819 F.3d 42 (2d Cir. 2016). In *Halo*, the Second Circuit vacated a district court opinion that had applied deferential arbitrary and capricious review to claim denials that failed to strictly comply—but nevertheless substantially complied—with ERISA regulations governing both the substance and timing of such decisions. *Id.* at 45–47. The court emphasized that the 2002 ERISA regulations radically overhauled the earlier version, and it focused particularly on the addition of subsection (l). *Id.* at 49–57. Because that provision "admittedly says nothing about standards of review," *id.* at 53, the court determined that it was "at least ambiguous with respect to the standard of review" that should be applied to decisions that fail to comply with proper claims procedures, *id.* at 54. It also considered the Department's interpretation of subsection (l), as reflected in the preamble, which states that "a decision made in the absence of the mandated procedural protections *should not be entitled to any judicial deference*." *Id.* at 53 (citation omitted).

While the court found the preamble instructive, the preamble did not resolve the question "whether a plan need only substantially comply with or must strictly adhere to the regulation to obtain the more deferential arbitrary and capricious standard of review." *Id.* at 56. On this question, the court considered the Department of Labor's choices during the drafting of subsection (l) to be conclusive. *Id*. After the Department proposed adding subsection (l), "commentators representing employers and plans argued that this provision would impose unnecessarily harsh consequences on plans that *substantially fulfill* the requirements of the regulations, but fall short in *minor* respects." *Id.* at 57 (citation omitted). Those commentators suggested replacing subsection (l) with a more flexible

standard, but the Department rejected those suggestions and left the language as it was. *Id.* Thus, the court held, "[w]hatever the merits of applying the substantial compliance doctrine under the 1977 claims-procedure regulation, we conclude that the doctrine is flatly inconsistent with the [2002] regulation." *Id.* at 56; *see also Rasenack ex rel. Tribolet v. AIG Life Ins. Co.*, 585 F.3d 1311, 1316 (10th Cir. 2009) ("The 2002 amendments have, however, called into question the continuing validity of the substantial compliance test we have used to avoid creating a rule that would automatically permit *de novo* review for every violation of the deadlines.").

*Halo* is inconsistent with our case law because we have applied the substantial compliance doctrine even since the 2002 regulations became effective. *See, e.g.*, *Edwards*, 639 F.3d at 361–62; *Ponsetti v. GE Pension Plan*, 614 F.3d 684, 693 (7th Cir. 2010); *Schneider v. Sentry Group Long Term Disability Plan*, 422 F.3d 621, 626–29 (7th Cir. 2005); *Kough v. Teamsters' Local 301 Pension Plan*, 437 F. App'x 483, 486 (7th Cir. 2011).[3] But we

---

[3] A more recent revision to the regulations expressly overrides the substantial compliance doctrine in favor of a new standard. *See* 29 C.F.R. § 2560.503-1(l)(2)(i) (2018) ("In the case of a claim for disability benefits, if the plan fails to strictly adhere to all the requirements of this section with respect to a claim, the claimant is deemed to have exhausted the administrative remedies available under the plan … ."); *id.* § 2560.503-1(l)(2)(ii) ("[T]he administrative remedies available under a plan with respect to claims for disability benefits will not be deemed exhausted based on de minimis violations that do not cause, and are not likely to cause, prejudice or harm to the claimant so long as the plan demonstrates that the violation was for good cause or due to matters beyond the control of the plan and that the violation occurred in the context of an ongoing, good faith exchange of information between the plan and the claimant."). Thus, the debate about the continued vitality of the substantial compliance doctrine is moot for cases governed by the new regulations.

need not decide whether we have been wrong to do so because we can decide the case on a narrower ground: even if the substantial compliance doctrine remains valid, it does not apply to the violation of regulatory deadlines.

The 2002 regulations strike a delicate balance between the administrator's need for more time and the claimant's need for a timely decision. After all, the administrator's interests are not the only ones at stake; delaying payment of a claim imposes financial pressure on the claimant. That pressure is particularly acute for a disability claimant, who applies for disability benefits because she is unable to work and therefore unable to generate income. Given the seriousness of that burden, the new regulations single out disability claims for quicker review than other kinds of claims. 29 C.F.R. § 2560.503-1(i)(3)(i) (2002).

When a claimant seeks review of an administrator's denial of benefits, the administrator must review the claim "not later than" a specified period of time—45 days for disability claims and 60 days for others. *Id.* § 2560.503-1(i)(1)(i); s*ee also id.* § 2560.503-1(i)(3)(i). The administrator can extend that time, but only when "special circumstances" apply. *Id.* § 2560.503-1(i)(1)(i) & (i)(3). During the extension period, a tolling mechanism protects the administrator from delay on the part of the claimant. *Id.* § 2560.503-1(i)(4) ("In the event that a period of time is extended … the period for making the benefit determination on review shall be tolled from the date on which the notification of the extension is sent to the claimant until the date on which the claimant responds to the request for additional information."). But when that time is up, it's up: the regulation provides that "*in no event* shall such extension exceed [the allotted] period." *Id.* § 2560.503-1(i)(1)(i) (emphasis

added). That period is 45 days for disability claims and 60 days for others. *Id.* § 2560.503-1(i)(3)(i) ("[C]laims involving disability benefits … shall be governed by paragraph (i)(1) of this section, except that a period of 45 days shall apply instead of 60 days for purposes of that paragraph.").

A court that excused even more administrative delay would upset the careful balance that the regulations strike between the competing interests of administrators and claimants.[4] It would also run afoul of § 2560.503-1(i)(1)(i), which says that *"in no event"* can a deadline be extended further. That language excludes nothing—*no event*, however reasonable or harmless—from its scope. Substantial compliance with a deadline requiring strict compliance is a contradiction in terms. *Cf. Burns*, 657 F.3d at 575 (holding that the doctrine of substantial compliance "cannot cure" the violation of an "explicit statutory requirement" in ERISA's text). The very point of a deadline is to impose a hard stop. *Cf. United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir. 2000) ("Foreclosing litigants from bringing their claim because they missed the filing deadline by one day may seem harsh, but courts have to draw lines somewhere … ."). Because the administrator lacks discretion to take longer than the regulations allow, its tardy decision is not entitled deference.

The regulations are not the only reason that Reliance's argument fails—applying the substantial compliance doctrine

---

[4] The old version of the regulations did not attempt this same balancing act. Instead, that version gave administrators the same amount of time to review disability claims as it did all other claims, and it did not toll the time for a decision on review while the administrator waited for additional information from the claimant. *Compare* 29 C.F.R. § 2560.503-1(h)(1)(i) (1977), *with id.* § 2560.503-1(i)(1)(i), (i)(3)(i), & (i)(4) (2002).

to blown deadlines is incompatible with the doctrine itself. We have said that an administrator substantially complies with ERISA's requirements if, despite the regulatory violation, it provides sufficient process and information to permit "effective review" of its denial of benefits. *See Schneider*, 422 F.3d at 627–28 (explaining that the substantial compliance doctrine is subservient to ERISA's broad goal of ensuring that the process and explanation accompanying a denial of benefits "is adequate to ensure meaningful review of that denial." (citation omitted)). For example, we might overlook an administrator's failure to strictly comply with the regulations governing the content of letters giving notice of benefit determinations so long as "the beneficiary [was] supplied with a statement of reasons that, under the circumstances of the case, permitted a sufficiently clear understanding of the administrator's position to permit effective review." *Id.* at 628 (citation omitted). This standard cannot be applied to an untimely decision because there is *nothing* to review at the time that administrative remedies are deemed exhausted. There is no explanation for a claimant to read and understand. And if the claimant files suit before the decision arrives, there is neither an exercise of discretion to which a court could defer nor anything for the court to use to measure the degree of the administrator's compliance. *See Univ. Hosp. of Cleveland v. Emerson Elec. Co.*, 202 F.3d 839, 846 n.3 (6th Cir. 2000) ("[T]here is undeniable logic in the view that a plan administrator should forfeit deferential review by failing to exercise its discretion in a timely manner.").

Fessenden's case highlights the point. After Reliance's initial decision denying him benefits, Fessenden had the opportunity to submit additional evidence to Reliance to support his claim on review. *See* 29 C.F.R. § 2560.503-1(h)(2)(ii) (2002).

He did so, providing extensive documentation and medical evaluations. After Reliance failed to issue a decision on this new record, Fessenden filed suit in federal court. Thus, when litigation began, the district court was presented with a claim for benefits based on evidence that, for all Fessenden and the court knew, Reliance had not yet considered, and had certainly not accounted for in any decision on Fessenden's claim. Both Fessenden and the court necessarily lacked a "sufficiently clear understanding of the administrator's position to permit effective review." *See Schneider*, 422 F.3d at 628 (citation omitted). The court could not have measured how compliant Reliance had been because Reliance had not yet complied at all. And in the absence of a decision to which it could defer, the district court had no choice but to review the claim de novo.

Reliance's position that an administrator can change the standard of review with a late-breaking decision would therefore be a novel application of the substantial compliance doctrine. And permitting that novelty would undercut the benefits of exhaustion for claimants. A claimant is entitled to sue as soon as a claim is deemed exhausted because the administrator has failed to make a timely decision. But Reliance's position would leave such a claimant in an uncertain position. Should she wait a little bit longer just in case the administrator makes a decision? Or should she go ahead, attempting to frame her case in a way that is responsive to a decision that hasn't yet—but may still—come? Moreover, an administrator who has more time may get an unfair advantage: it could sandbag a claimant who sues at the point of exhaustion by issuing a decision tailored to combat her complaint. *See Jebian v. Hewlett-Packard Co. Emp. Benefits Org. Income Prot. Plan*, 349 F.3d 1098, 1104 (9th Cir. 2003) ("[A] contrary rule would allow

claimants, who are entitled to sue once a claim had been 'deemed denied,' to be 'sandbagged' by a rationale the plan administrator adduces only after the suit has commenced."); *see also Fed. Power Comm. v. Texaco, Inc.*, 417 U.S. 380, 394–97 (1974) (acknowledging that the Commission had "great discretion" but explaining that failure to exercise that discretion at the appropriate time cannot be remedied with "post hoc rationalizations" (citation omitted)). In short, giving administrators a post-exhaustion grace period creates problems.

We acknowledge that some of our sister circuits have been willing to apply the substantial compliance exception to blown deadlines. *See Gilbertson*, 328 F.3d at 634–35 (applying the substantial compliance doctrine to an administrator's untimely decision under the pre-2002 regulation); *Jebian*, 349 F.3d at 1108 ("Absent unusual circumstances, an administrator engaged in a genuine, productive, ongoing dialogue that substantially complies with a plan's and the regulations' timelines should remain entitled to whatever discretion the plan documentation gives it."); *see also Becknell v. Severance Pay Plan of Johnson & Johnson*, 644 F. App'x 205, 213 (3d Cir. 2016) (conducting deferential review because "[the plan administrator's] late decision does not rise to the level of a severe procedural violation"). These circuits have seen no difference between forgiving tardiness and forgiving violations of other procedural requirements.

We disagree.[5] As an initial matter, it is worth noting that many of the circuits currently applying the exception to

---

[5] This opinion has been circulated among all judges of this court in regular service. *See* 7th Cir. R. 40(e). No judge favored a rehearing en banc on the question whether failure by a plan administrator to strictly comply

missed deadlines have relied on precedent that predates the 2002 version of the regulations. The earlier version offered a much less nuanced approach to balancing the competing interests at stake, which subjected the goals of ERISA to different kinds of gamesmanship and perverse incentives. *See Gilbertson*, 328 F.3d 634–35; *see id.* at 629 n.3, 631 n.4. For example, because the old regulations did not include tolling provisions to stop the clock while the administrator was waiting on information from the claimant, "claimants might [have been] encouraged to delay a final decision by suggesting that they intend[ed] to produce additional information, only to pull the plug and demand *de novo* review in federal court on the [last] day." *Id.* at 635. The substantial compliance doctrine allowed courts the flexibility to police such gamesmanship and avoid results that would be "antithetical to the aims of ERISA." *Id.* But the amendments reflected in the 2002 regulations address the incentives concern head-on by including more detailed and balanced provisions on timing and tolling. Thus, the oft-invoked rationale for applying the exception to missed deadlines no longer exists.

Yet whatever its merits under prior versions of the regulations, we hold that excusing late decisions is both foreclosed by the 2002 regulations and incompatible with the doctrine. It is also in significant tension with our own precedent. In *Edwards v. Briggs & Stratton Retirement Plan*, a claimant who missed a deadline argued that the substantial compliance exception should excuse her untimeliness. 639 F.3d at 361–62. We rejected her argument. At the outset, we observed that we

with ERISA's regulatory deadlines results in de novo review of a benefits denial.

had never applied the doctrine to excuse the mistakes of claimants, as opposed to administrators. *Id.* at 362. But we also emphasized:

> [I]t seems consistent neither with the policies underlying the requirement of exhaustion of administrative remedies in ERISA cases nor with judicial economy to import into the exhaustion requirement the substantial compliance doctrine. To so hold would render it effectively impossible for plan administrators to fix and enforce administrative deadlines while involving courts in detailed, case-by-case determinations as to whether a given claimant's failure to bring a timely appeal from a denial of benefits should be excused or not.

*Id.*; *see also id.* ("[T]he Plan has fixed a clear deadline of 180 days for filing administrative appeals from denials of benefits, and the Plan has the right to enforce that deadline."). That reasoning applies equally to deadlines that bind plan administrators. What's good for the goose is good for the gander.

\* \* \*

Because the doctrine of substantial compliance does not apply to ERISA's regulatory deadlines, Fessenden's claim should have been reviewed de novo. We therefore VACATE the district court's summary judgment determination and REMAND for proceedings consistent with this opinion.