**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-1144
_____

JODY RIZZO

v.

FIRST RELIANCE STANDARD LIFE INSURANCE CO;
BARNES & NOBLE INC; JOHN DOES 1-10 (FICTITIOUS DEFENDANTS);
XYZ CORPS, 1-10 (FICTITIOUS DEFENDANTS)

First Reliance Standard Life Insurance Co.,
Appellant
_____

On Appeal from the United States District Court
For the District of New Jersey
(D.C. No. 3-17-cv-00745)
District Judge:  Honorable Peter G. Sheridan
_____

Argued
September 7, 2022

Before:  JORDAN, HARDIMAN and SMITH, *Circuit Judges*

(Filed  December 16, 2022)
_____

Heather J. Austin
Joshua Bachrach   [ARGUED]
Wilson Elser Moskowitz Edelman & Dicker
2001 Market Street
Two Commerce Square, Suite 3100
Philadelphia, PA   19103
	*Counsel for Appellant*

Gregory S. Heizler   [ARGUED]
Mennie Heizler, LLC
54 East Water Street
P.O. Box 2237
Toms River, NJ   08753
       *Counsel for Appellee*

_____

OPINION*

_____

JORDAN, *Circuit Judge*.

First Reliance Standard Life Insurance Company appeals the District Court's

judgment in favor of Jody Rizzo on her claim for the wrongful denial of benefits from her

husband's life insurance policy under the Employee Retirement Income Security Act of

1974.  We will affirm.

I.     **BACKGROUND**

Jody Rizzo's husband, Angelo, was an Assistant Store Manager at Barnes &

Noble.  On November 7, 2012, he experienced shortness of breath and dizziness while

shoveling snow.  That prompted him to stop working at his Barnes & Noble job and to

later file a claim with his insurer, First Reliance, under a long-term disability policy.  In

connection with his claim, Mr. Rizzo's family doctor, Martin Riss, completed a form

indicating that Mr. Rizzo would be able to return to "usual work" by April 29, 2013, with

a 50-pound lifting limitation.  (App. at 441.)

_____

        * This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7,
does not constitute binding precedent.

In March 2013, Mr. Rizzo filed an application for a "waiver of premium" (WOP) benefits under his life insurance policy, also with First Reliance. The WOP benefits would have enabled him to continue his life insurance coverage without paying monthly premiums. For Mr. Rizzo to receive the WOP benefits, First Reliance had to find him "completely unable to engage in any type of work for wage or profit for which [he was] suited by education, training or experience." (App. at 194.) In an effort to support such a finding, Mr. Rizzo asked Dr. Riss to complete a Physician's Statement Form. The doctor did so, identifying Mr. Rizzo's diagnoses as including coronary artery disease, hypertension, peripheral vascular disease, and diabetes. On the section of the form that asked Dr. Riss to indicate Mr. Rizzo's physical restrictions, Dr. Riss handwrote "disabled." (App. at 227.)

When considering a WOP claim, a First Reliance claim examiner must review "all of the information in the claim file," including attending physician statements, medical records, functional capacity evaluations, independent medical evaluations, reviews of medical records, and other relevant information. (Supp. App. at 75.) As part of the process, a vocational expert has to complete a Residual Employability Analysis ("Employability Analysis") to determine the claimant's residual work capacity. The vocational expert cannot complete the Employability Analysis until "all applicable

information is received and reviewed[,]" and the expert must specifically cite the information relied upon.[1]  (Supp. App. at 78; App. 608.)

The "Medical Information" section of the Employability Analysis for Mr. Rizzo's claim is dated September 3, 2013, and includes only a single line of text: an excerpt from a nurse's May 2013 opinion that Mr. Rizzo had "[*s*]*edentary restrictions and limitations*[.]"  (App. at 605.) (emphasis in original.)  In that opinion, the nurse recommended an update be made in October 2013 but, for undisclosed reasons, that update never occurred.  An independent case manager sent a Physical Capacities Questionnaire to Mr. Rizzo's cardiologist on August 22, 2013, but was told, in effect, to wait for an answer because Mr. Rizzo would be seeing the cardiologist in September.  Despite the gaps thus left in Mr. Rizzo's record with First Reliance, the vocational expert completed the Employability Analysis on September 3 anyway.

Later that month, Mr. Rizzo's cardiologist's office did submit the Physical Capacities Questionnaire, in which a cardiologist – not the one treating Mr. Rizzo – drew a slash through the assessment questions and wrote "N/A."  (App. at 625-26.)  He also wrote on the form that Mr. Rizzo "is not on disability for cardiac reasons" and "we will not assess the above."  (App. at 626.) (emphasis in original.)  When the case manager received the form on September 27, 2013, she told the vocational expert that the

---

[1] This characterization of the WOP review process is drawn from Mrs. Rizzo's description, which First Reliance has not meaningfully contested.  *Cf. Beaver E., Inc. v. Mead Corp.*, 412 F.3d 429, 437 n.11 (3d Cir. 2005) (explaining that an "appellee 'waives, as a practical matter anyway, any objections not obvious to the court to specific points urged by the [appellant].'").

cardiologist "would not complete or address [Mr. Rizzo's] work status." (App. at 630.) The vocational expert authorized the case manager to "place [the] vocational file on hold status for 60 days so that a medical determination of Mr. Rizzo's physical capacities [could] be obtained." (App. at 630.)

On October 9, 2013, 203 days after Mr. Rizzo submitted his WOP claim, First Reliance finally sent him a denial letter.[2] First Reliance explained: "We have found that as of November 8, 2012 through November 1, 2013 you are capable of sedentary work exertion." (App. at 194.) The letter stated that Mr. Rizzo could submit a form to "convert" his group policy to an individual policy, through which he could maintain life insurance despite having stopped working and having been denied the WOP benefit. (App. at 195.) First Reliance also stated that Mr. Rizzo could request a review of the denial by submitting a written request within 180 days of receipt of the letter. That never happened because, sadly, on February 24, 2014, he died. He was 42 years old.

In early March of 2014, Mrs. Rizzo called First Reliance in connection with her husband's death. She noted that they had never received the WOP denial letter and, if they had, "they would have converted [the life insurance policy] since they have a baby and this is the only [insurance] her husband had." (App. at 191.) Following the call, First Reliance sent Mrs. Rizzo a copy of the denial letter.

---

[2] The parties disagree about whether the letter was sent, but, for the purposes of summary judgment, Mrs. Rizzo "factually accepted" that the letter was sent on October 9, 2013. (Answering Br. at 6 n.2.)

5

In July 2016, Mrs. Rizzo attempted to appeal the decision but was denied because her appeal was untimely. She then filed this lawsuit against First Reliance on January 10, 2017, asserting five counts under New Jersey law and two ERISA claims. First Reliance responded with a motion to dismiss, asserting, among other things, that the ERISA claim alleging wrongful denial of benefits under 29 U.S.C. § 1132(a)(1)(B) was infirm because no administrative appeal had been filed. The District Court granted the motion as to one of the ERISA claims and all the state law claims. As for the remaining ERISA claim, namely the one for wrongful denial of benefits, the District Court stated that, having "review[ed] the record in the light most favorable to [Mrs. Rizzo], the Court is satisfied for purposes of this motion to dismiss that [Mrs. Rizzo] exhausted administrative remedies" (App. at 13), and so the suit was allowed to proceed.

After discovery, the parties filed cross-motions for summary judgment on two issues: "(1) whether [Mrs. Rizzo] was required but failed to exhaust administrative remedies prior to bringing [her] ERISA action; and (2) whether [First Reliance] wrongfully denied [Mrs. Rizzo]'s request for benefits." (App. at 17.) On the first issue, the District Court concluded that Mrs. Rizzo was not required to actually exhaust administrative remedies but should be deemed to have met the exhaustion requirement, due to First Reliance's untimely denial of the claim and according to 29 C.F.R. § 2560.503-1 (2002)[3] (the "Regulation"), the relevant text of which is quoted and

---

[3] Because the claim at issue here was submitted before April 1, 2018, citations throughout are to the edition of the Regulation applicable to claims submitted prior to that date. *See Claims Procedure for Plans Providing Disability Benefits; 90-Day Delay of*

6

discussed herein. On the second issue, the District Court concluded that First Reliance's

denial was arbitrary and capricious because it had "seemingly turned a blind eye to

information that was, or could have been made, available to it" before its denial. (App. at

35.) The District Court also concluded that Mrs. Rizzo was entitled to the $188,000

provided by Mr. Rizzo's life insurance policy, as well as pre- and post-judgment interest.

First Reliance appealed.

## II. DISCUSSION[4]

### A. Exhaustion of Mrs. Rizzo's Administrative Remedies[5]

On appeal, First Reliance contends that the District Court erred in holding that

Mrs. Rizzo's administrative remedies should be treated as exhausted based on First

---

*Applicability Date*, 82 Fed. Reg. 56560-01 (Nov. 29, 2017) ("This rule delays the applicability date of the Department's amendments to the disability claims procedure rule for 90 days, through April 1, 2018.").

[4] The District Court had jurisdiction under 29 U.S.C. § 1132(e) and 28 U.S.C. § 1331. We have jurisdiction pursuant to 28 U.S.C. § 1291. "We exercise plenary review over the district court's grant of summary judgment, applying the same standard that the court should have applied." *Howley v. Mellon Fin. Corp.*, 625 F.3d 788, 792 (3d Cir. 2010) (citation omitted). "Summary judgment is appropriate if, viewing the facts in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Id.* (citing Fed. R. Civ. P. 56(c)(2)).

[5] Judge Hardiman does not join Part II.A. He considers the regulation ambiguous. *See Holmes v. Colorado Coal. for Homeless Long Term Disability Plan*, 762 F.3d 1195, 1207 n.10 (10th Cir. 2014) (comparing cases treating the regulation as ambiguous; *see also Fessenden v. Reliance Standard Life Ins. Co.*, 927 F.3d 998, 1003 & n.3 (7th Cir. 2019) (explaining how the 2018 Department of Labor amendments clarified the ambiguous regulation). He would hold that Rizzo's claim should be deemed exhausted because First Reliance's noncompliance with the deadline was a plan failure that created an unreasonable claims procedure. *See Fessenden*, 927 F.3d at 1000. Moreover, Mrs.

Reliance's failure to follow the aforementioned Regulation. The Regulation states in pertinent part that, when a claimant like Mr. Rizzo seeks a benefit like the WOP, the "plan administrator shall notify the claimant … of the plan's adverse benefit determination within a reasonable period of time, but not later than 45 days after receipt of the claim by the plan." 29 C.F.R. § 2650.503-1(f)(3) (2002). If the plan administrator determines an extension is necessary, two 30-day extensions are allowed, provided that the plan administrator has cause and notifies the claimant of the extensions. *Id.* All told, the plan administrator has, at most, 105 days to notify the claimant of the plan's determination.[6] *Id.* If the plan administrator fails to follow the procedures outlined in the Regulation, "a claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under [29 U.S.C. § 1132(a).]" *Id.* at (l)(1).

First Reliance argues that the District Court "misread the language and purpose of the regulation" and that, because Mrs. Rizzo did not file a lawsuit before the claim decision was eventually made, "any rights she had related to a late decision no longer

---

Rizzo was denied meaningful access to the appeals procedure because, when First Reliance sent her a copy of the October 9 letter after his death, it did not explain how her husband's death might affect the appeals process.

[6] The District Court cited to Subsection (f)(1) of the Claims Procedure regulations under ERISA, which sets the adverse determination period to 90, not 105, days at most. *Rizzo v. First Reliance*, 417 F. Supp. 3d 479, 487, 491 (D.N.J. 2019). The parties, however, agree that Subsection (f)(3) applies to the claim at issue here. First Reliance also had a policy requiring the same time and notification restraints. Either way, First Reliance's denial was plainly tardy, so that does not alter our analysis.

existed and an appeal from the denial was then required." (Opening Br. at 24-25.) We are unpersuaded. It is undisputed that First Reliance did not notify Mr. Rizzo of the denial of his WOP claim until 203 days after he filed it. That untimely denial – at least 98 days late[7] – dooms any argument that Mrs. Rizzo was required to exhaust her administrative remedies before bringing suit under § 1132(a)(1)(B). While First Reliance asserts that the "language and purpose of the regulation" do not support that outcome, (Opening Br. at 24), the text of the provision is unambiguous: "In the case of the failure of a plan to … follow claims procedures consistent with the requirements … , a claimant *shall* be deemed to have exhausted the administrative remedies available under the plan and *shall* be entitled to pursue *any* available remedies under [29 U.S.C. § 1132(a).]" 29 C.F.R. § 2560.503-1(l) (2002) (emphasis added); *see SAS Inst., Inc. v. Iancu*, 138 S. Ct. 1348, 1354 (2018) ("[T]he word 'any' naturally carries 'an expansive meaning.'"). Moreover, the Regulation, which generally sets a 45-day deadline, uses the word "may" in describing how First Reliance could take up to 105 days, and so makes even more plain the mandatory nature of the word "shall" in this context. *See Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 172 (2016) (explaining that when surrounding subsections of a provision "distinguish[] between 'may' and 'shall,'" as is the case here, "it is generally clear that 'shall' imposes a mandatory duty").

---

[7] In treating First Reliance's denial as being 98 days late and not even later, we are assuming the denial letter was sent October 9, 2013, and further assuming that First Reliance was entitled to two 30-day extensions – though there is no evidence in the record that First Reliance needed those extensions or notified the Rizzos about them.

Thus, the text clearly instructs that, when a claimant files suit to challenge an untimely benefits denial pursuant to 29 U.S.C. § 1132(a), the court is not free to use the prudential exhaustion doctrine to usher the claimant out the door.[8] *Cf. SAS Inst., Inc.*, 138 S. Ct. at 1354 ("[W]hen § 318(a) says the Board's final written decision 'shall' resolve the patentability of 'any patent claim challenged by the petitioner,' it means the Board *must* address *every* claim the petitioner has challenged.") (emphasis in original). When a regulation is unambiguous, it "just means what it means – and the court must give it effect, as the court would any law." *Kisor v. Wilkie*, 139 S. Ct. 2400, 2415 (2019). Consequently, First Reliance's tardy denial of the WOP benefit effectively excused any exhaustion requirement pertaining to Mrs. Rizzo's administrative remedies. Put differently, it causes us to treat the prerequisite of exhaustion as having been met.

That conclusion is also supported by the regulation's purpose. It functions as a "penalty for failure to meet [the Regulation's deadlines.]" *Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 571 U.S. 99, 112 (2013). The Department of Labor evidently intended it to be such, and, despite industry pleas for a more lenient approach, it chose to make the

---

[8] The prudential exhaustion doctrine is a judge-made rule that, when a law like ERISA does not explicitly require a claimant to exhaust his remedies before filing a lawsuit, "requires the application of the exhaustion requirement[.]" *Noga v. Fulton Fin. Corp. Emp. Benefit Plan*, 19 F.4th 264, 273 n.4 (3d Cir. 2021) (citation omitted). The doctrine is not without its detractors, *see Wallace v. Oakwood Healthcare, Inc.*, 954 F.3d 879, 900–01 (6th Cir. 2020) (Thapar, J., concurring) ("[E]mployees' benefit rights should not depend on 'a hazy body of policy choices that courts are free to "discover."' … They should just depend on (1) the statute Congress enacted and (2) the plan documents they or their employers agreed to … . It should bother us that such a ubiquitous doctrine, one that has thwarted many an employee's efforts to enforce his benefit rights, rests on such shaky foundations."), but we do not need to address the advisability of it here.

10

Regulation strict. *Employee Retirement Income Security Act of 1974; Rules and Regulations for Enforcement; Claims Procedure*, 65 Fed. Reg. 70246, 20255-56 (Nov. 21, 2000) ("Inasmuch as the regulation makes substantial revisions in the severity of the standards imposed on the plans, we believe that plans should be held to the articulated standards as representing the minimum procedural regularity that warrants imposing an exhaustion requirement on claimants.").

First Reliance contends that its untimely denial was merely "technical noncompliance with the regulation deadline[,]" and Mrs. Rizzo still had a "fair and reasonable opportunity" to exhaust her administrative remedies. (Opening Br. at 29 (quoting *Perrino v. Southern Bell Tel. & Tel. Co.*, 209 F.3d 1309, 1317 (11th Cir. 2000)).) As just discussed, however, that argument is contrary to the text and purpose of the Regulation. But even if that argument could be given some weight, First Reliance's untimely denial was not just mildly noncompliant; it was grossly so. There is simply no sound basis for disregarding the Regulation's clear text and purpose. We therefore deem the exhaustion requirement satisfied.

## B. First Reliance's Denial of Mr. Rizzo's WOP Claim

We turn, then, to the merits of First Reliance's denial of the WOP benefit. First Reliance argues that, because the medical and administrative records support the conclusion that Mr. Rizzo could engage in sedentary work, the District Court erred in concluding that the denial was arbitrary and capricious. According to First Reliance, the

11

October 2013 denial letter was based on "a lot more" than just the excerpt from the nurse's opinion cited in the Employability Analysis. (Opening Br. at 39-42.)

When a plan gives an administrator discretionary authority to make eligibility determinations, as is the case here, we review its decisions under an "abuse of discretion" standard, which, in the ERISA context, is effectively the same as a review for "arbitrary and capricious" action. *Viera v. Life Ins. Co. of N. Am.*, 642 F.3d 407, 413 & n.4 (3d Cir. 2011). "An administrator's decision constitutes an abuse of discretion only if it is without reason, unsupported by substantial evidence or erroneous as a matter of law." *Howley v. Mellon Fin. Corp.*, 625 F.3d 788, 792 (3d Cir. 2010) (citation and internal quotation marks omitted). Courts review both the substance of a decision and its reasoning to ensure the challenged decision is "the product of reasoned decision-making and substantial evidence." *Miller v. Am. Airlines, Inc.*, 632 F.3d 837, 856 (3d Cir. 2011).

The Supreme Court explained that standard in *Metropolitan Life Ins. v. Glenn*, 554 U.S. 105 (2008), saying it "ask[s] judges to determine lawfulness by taking account of several different, often case-specific, factors, reaching a result by weighing all together." *Id.* at 117. Our decision in *Noga v. Fulton Fin. Corp. Emp. Benefit Plan*, 19 F.4th 264, 275-79 (3d Cir. 2021), notes that such a combination-of-factors review may consider structural and procedural irregularities. Drawing on *Noga* and other cases, such factors may include: (1) the plan administrator's conflict in both administering claims and paying them, *Glenn*, 554 U.S. at 108; (2) failure to identify the rationale or all of the relevant diagnoses in the denial letter, *Miller*, 632 F.3d at 851-52; (3) non-compliance with ERISA regulations, *id.* at 850-51; (4) "failure to address all relevant diagnoses" or an

12

otherwise incomplete medical analysis by an examiner, *id.* at 853; and (5) unusual timing or behavior related to seeking medical evaluations, *Noga*, 19 F.4th at 277. There are "no talismanic words that can avoid the process of judgment." *Glenn*, 554 U.S. at 119 (citation and internal quotations omitted). And our review is confined to the information contained in the administrative record – that is, using an affidavit "to provide context for procedural anomalies in the handling of [a] claim" is not permitted, and "an ERISA administrative record may not be supplemented with *post hoc* explanations for procedural irregularities." *Noga*, 19 F.4th at 275.

There is at least some evidence for First Reliance's conclusion that Mr. Rizzo could perform sedentary work, such as Mr. Rizzo's own reports in July 2013 that he went for walks, exercised in the pool, drove, did household chores, helped with childcare, and used the internet. But, even assuming First Reliance's decision was substantively reasonable, it also had to be procedurally reasonable; the process it took to reach its conclusion must have been "the product of reasoned decision-making[.]" *Miller*, 632 F.3d at 856. That is what's lacking here.

The specifics of the case before us guide our review. First, the conflict stemming from the fact that First Reliance both administers and pays claims is noteworthy but of relatively minor importance, given that this sort of arrangement often exists, and Mrs. Rizzo has offered nothing to show that the conflict affected the claim decision. *See Glenn*, 554 U.S. at 108 ("Benefits decisions arise in too many contexts, concern too many circumstances, and can relate in too many different ways to conflicts…for us to come up with a one-size-fits-all procedural system that is likely to promote fair and accurate

13

review."). Second, nowhere in the denial letter or elsewhere in the record does it clearly state which of Mr. Rizzo's medical conditions were evaluated, or how, if at all, efforts were made to give weight to certain pieces of information. On the contrary, First Reliance maintains that its conclusion was based on "all … the information from *both* [the long-term disability and WOP] *claims*," (Opening Br. at 37), and that it considered "other evidence" when it denied the claim, (Reply Br. at 20). It is telling, however, that First Reliance cannot point to anything in the record for support. Given our observation in *Noga* that fiduciaries, like First Reliance, have "adequate incentives to develop the record about claims processing," as doing so "may insulate [a denial] from reversal by including in the record supporting rationales and evidence for its decision," 19 F.4th at 274, one would think that a detailed basis for the decision would be provided here. First Reliance provided no such evidence. Third, First Reliance's noncompliance with the Regulation in sending an untimely denial remains unexplained and violated not only the Regulation itself (29 C.F.R. § 2650.503-1(f)(3)), but also First Reliance's own internal procedures (Supp. App. at 75).

Most importantly, when we examine how First Reliance actually made its decision, there is every appearance that the denial letter was the product of an arbitrary process. If, as seems to be the case, the claims examiner relied only on the short excerpt from the nurse's May 2013 opinion that was included in the Employability Analysis – a snippet of opinion based only on information available prior to that date and failing to investigate the very recommendation in the opinion that Mr. Rizzo's physical capacity be updated in October of 2013 – then that analysis is plainly inconsistent with First

14

Reliance's stated process for denying a WOP claim. The Employability Analysis was completed before all applicable information, including the Physical Capacities Questionnaire, was received and reviewed. On the other hand, if the claims examiner relied on both the nurse's May 2013 opinion and the Physical Capacities Questionnaire received in late September, that too is inadequate. The Physical Capacities Questionnaire stated that his cardiologist's office would not offer an assessment. The independent case manager understood the nature of the response, as demonstrated by her telling the vocational expert that "the physician would not complete or address work status" and that the vocational file should be put on hold status for 60 days. (App. at 630.) Either way, the decision, though already late, was inexplicably rushed out the door, with no indication that it relied on anything but a stale medical opinion from a nurse or a non-response from a non-treating cardiologist.[9] Neither is suggestive of a reasoned decision-making process.

Taken in totality, the various factors we have analyzed demonstrate that First Reliance's denial was arbitrary and capricious, notwithstanding the existence of some evidence from which a reasonable person might have concluded Mr. Rizzo was capable of sedentary work. The District Court appropriately awarded Mrs. Rizzo $188,000 under Mr. Rizzo's life insurance policy.

---

[9] The rush to send the October 9 denial letter is also apparent in the fact that First Reliance found Mr. Rizzo capable of sedentary work "as of November 8, 2012 through November 1, 2013[.]" (App. at 194.) The latter date is three weeks after the denial letter was sent. Although this suggests that First Reliance considered medical evidence within that window of time, First Reliance did not wait for the November 1 date to review any new medical evidence before sending its denial.

**III.** **CONCLUSION**

For the foregoing reasons, we will affirm.