**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 24-1940**

HEATHER COGDELL,

Plaintiff – Appellee,

v.

RELIANCE STANDARD LIFE INSURANCE COMPANY,

Defendant – Appellant.

**No. 25-1083**

HEATHER COGDELL,

Plaintiff – Appellee,

v.

RELIANCE STANDARD LIFE INSURANCE COMPANY,

Defendant – Appellant.

Appeals from the United States District Court for the Eastern District of Virginia, at Alexandria.  Anthony John Trenga, Senior District Judge.  (1:23-cv-01343-AJT-JFA)

Argued:  December 9, 2025                           Decided:  March 3, 2026

Before AGEE and QUATTLEBAUM, Circuit Judges, and FLOYD, Senior Circuit Judge.

Affirmed by published opinion. Judge Agee wrote the opinion, in which Judge Quattlebaum and Judge Floyd joined.

---

**ARGUED:** Joshua Bachrach, WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP, Philadelphia, Pennsylvania, for Appellant. Benjamin W. Glass, III, BENJAMIN W. GLASS, III & ASSOCIATES, Fairfax, Virginia, for Appellee. **ON BRIEF:** Peter M. Moore, WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP, McLean, Virginia, for Appellant. Damon R. Miller, BENJAMIN W. GLASS, III & ASSOCIATES, Fairfax, Virginia, for Appellee.

---

AGEE, Circuit Judge:

When the administrator of an employee benefits plan governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.*, denies a claim for benefits, it must employ reasonable procedures that provide the claimant with a full and fair review of that denial. For a disability benefits claim, a plan administrator ordinarily has 45 days to decide an internal appeal of the initial denial. But if the plan administrator notifies the claimant that special circumstances exist and tells the claimant when a decision is expected, it can take up to another 45 days.

If the administrator upholds the denial of benefits, ERISA allows the claimant to seek judicial review in federal court. In undertaking that review, if the plan vests its administrator with discretion to make eligibility determinations, and the administrator effectively exercises that discretion, a district court must afford deference to the administrator's decision in most instances. However, if the administrator fails to exercise its fiduciary discretion, then a district court may review de novo whether the claimant is entitled to benefits.

Here, we must decide whether a plan administrator that issues an untimely decision for an internal appeal of a disability benefits claim is entitled to deferential review. We hold that, at least under the facts of this case, the answer is "no" given the absence of a valid exercise of discretion.

3

I.

Heather Cogdell worked at MITRE Corporation ("MITRE") beginning in 2014, most recently as a Principal Business Process Engineer. In July 2021, Cogdell contracted COVID-19 and experienced symptoms of long-COVID, including intense fatigue and sporadic headaches, for some time after the initial illness subsided. Consequently, Cogdell took Family and Medical Leave Act leave for the next year, during which she worked part-time. Just as she turned a corner and started to progress, Cogdell suffered from a second COVID-19 infection in July 2022. This second bout derailed her recovery and left her unable to work in her job at MITRE.

Cogdell filed a claim in November 2022 for long-term disability ("LTD") under MITRE's plan (the "Plan"), which was administered by Reliance. Because the Plan required Cogdell to exhaust all other benefits before receiving LTD, she selected the day after her short-term disability benefits ended as the "date of loss." J.A. 224. For Cogdell to be entitled to LTD benefits under the Plan, she must be "Totally Disabled," meaning that, "as a result of [a sickness] . . . during the Elimination Period[1] and for the first 24 months for which a Monthly Benefit is payable, [she] cannot perform the material duties of [her] regular occupation."[2] J.A. 59.

---

[1] The "Elimination Period" is "a period of consecutive days of Total Disability . . . for which no benefit is payable," which "begins on the first day of Total Disability" and continues for "180 consecutive days of Total Disability." J.A. 56, 58.

[2] In a roundabout definition, the Plan provides that a "Partially Disabled" claimant is "Totally Disabled." J.A. 59. "Partially Disabled" means that "as a result of an Injury or Sickness an Insured is capable of performing the material duties of his/her regular occupation on a part-time basis or some of the material duties on a full-time basis." *Id.*

4

In a letter dated January 12, 2023, Reliance denied Cogdell's LTD benefits claim, concluding that she was not "Totally Disabled." J.A. 188–91. Cogdell submitted additional medical records to Reliance, and, in another letter dated February 17, 2023, Reliance told her that it stood by its decision to deny benefits. J.A. 197–200.

Cogdell timely filed an internal appeal on August 15, 2023, triggering the beginning of Reliance's 45-day decision period. Along with a 21-page letter in support of her claim, Cogdell submitted various documents for Reliance to consider. Records show that by August 23, a nurse employed by Reliance had already: (a) reviewed and summarized all the newly submitted documents; (b) "[c]onsulted other clinician with regards to this claim"; (c) received that clinician's concurrence in her assessment of those documents; and (d) "suggest[ed]" the appeal be sent for a "pre-appeal" behavioral health "specialist to determine if [Cogdell] would have a lack of function[.]" J.A. 108–09.

But Reliance did nothing more with Cogdell's appeal until 27 days later (September 19), when it was "referred" to the internal appeals department. J.A. 116. In a September 25 letter to Cogdell, Reliance stated that it "determined [it] will require an independent physician review" and that the letter was "to serve as notice of [its] intention to take beyond [45] days to make a final decision." J.A. 204–05. The September 25 letter did not include the date Reliance expected to issue its decision, nor did it identify a "special circumstance" to justify an extension.

On October 3, after the initial 45-day decision period lapsed, Cogdell sued Reliance in the Eastern District of Virginia for wrongful denial of benefits under 29 U.S.C.

5

§ 1132(a)(1)(B). On October 26—72 days after Cogdell filed her appeal—Reliance upheld its decision denying Cogdell's claim for LTD benefits.

The parties cross-moved for judgment on the administrative record and the district court found for Cogdell. *Cogdell v. Reliance Standard Life Ins. Co.*, 748 F. Supp. 3d 391 (E.D. Va. 2024). At the outset, the district court rejected Reliance's argument that it was entitled to deferential review. *See id.* at 395–99. In doing so, it found that Reliance departed from the applicable claims procedures regulations because it did not timely decide Cogdell's internal appeal. *See id.* at 399. That failure, the district court concluded, meant that de novo review of Cogdell's claim for benefits was appropriate. *Id.* The court went on to make findings of fact and conclusions of law under Federal Rule of Civil Procedure 52, and, on the merits, concluded that Cogdell was entitled to LTD benefits under the Plan. *See id.* at 399–404.

After Reliance timely noticed an appeal of that decision, the district court awarded Cogdell $210,769.49 in past-due benefits, $22,544.95 in prejudgment interest, and post-judgment interest. J.A. 43. Reliance then timely noticed an appeal of that award, and both appeals were consolidated for briefing and consideration.[3] We have jurisdiction under 28 U.S.C. § 1291.

---

[3] Despite appealing both orders, Reliance challenges only the merits of the district court's first decision, not its later calculation of the benefits owed.

II.

We review the district court's "legal conclusions and application of the law to the facts" de novo, *Tatum v. RJR Pension Inv. Comm.*, 855 F.3d 553, 560 (4th Cir. 2017), and its factual findings for clear error, *Tekmen v. Reliance Standard Life Ins. Co.*, 55 F.4th 951, 964 (4th Cir. 2022).

III.

The standard of review takes center stage in this appeal. By statute, a participant in, or beneficiary of, an ERISA-governed plan may sue in federal court "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Although ERISA is "a comprehensive and reticulated statute[,]" it does not provide the standard of review courts are to use when deciding an action challenging benefit eligibility determinations. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 108–09 (1989) (quoting *Nachman Corp. v. Pension Benefit Guar. Corp.*, 446 U.S. 359, 361 (1980)). To fill that gap, the Supreme Court has resolved that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed . . . *de novo* [] unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Id.* at 115. So as long as the administrator exercises its fiduciary authority within the parameters established by the plan, ERISA, and its regulations, a court will review its benefits determination for abuse of discretion.

7

Here we must decide two issues to apply the standard of review. The first is whether Reliance timely decided Cogdell's internal appeal as required by the applicable ERISA regulations and the Plan. As we explain below, we agree with the district court that Reliance failed to do so, meaning that Cogdell's claim was deemed denied and that she exhausted her administrative remedies as required to file her suit in federal court.

The second issue is whether Reliance's failure to timely issue a decision affects the district court's standard of review when reviewing Cogdell's deemed-denied claim. The district court concluded that Reliance's failure resulted in de novo review. We agree. Although the Plan vests Reliance with discretion to make benefits eligibility determinations, Reliance's failure to timely decide Cogdell's internal appeal amounted to a forfeiture of fiduciary action, and no deference is due in that circumstance.

Because the district court properly reviewed Cogdell's claim de novo, and because Reliance does not show any legal error or clearly erroneous factfinding arising from that review, we see no error in the court's disability benefits determination and accordingly will affirm the district court's judgment.

## A.

We begin with an overview of ERISA and its implementing regulations. Congress enacted ERISA "to promote the interests of employees and their beneficiaries in employee benefit plans, and to protect contractually defined benefits." *Firestone*, 489 U.S. at 113 (cleaned up). ERISA advances these aims by "regulating the manner in which plans process benefits claims." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 830 (2003). For example, ERISA requires an administrator of an employee benefit plan to "provide

8

adequate notice in writing to any participant or beneficiary whose claim for benefits . . . has been denied," and to "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review . . . of the decision denying the claim." 29 U.S.C. § 1133(1)–(2).

"ERISA empowers the Secretary of Labor to 'prescribe such regulations as he finds necessary or appropriate to carry out' the statutory provisions securing employee benefit rights." *Black & Decker*, 538 U.S. at 831 (quoting 29 U.S.C. § 1135). Charged with the duty to implement ERISA's directives, the Secretary of Labor has promulgated (and periodically amended) claims procedure regulations. *See* 29 C.F.R. § 2560.503-1.

Broadly speaking, these regulations require an employee benefit plan to "establish and maintain reasonable procedures governing the . . . appeal of adverse benefit determinations[.]"[4] *Id.* § 2560.503-1(b). To be reasonable, the claims procedures for ERISA-governed plans must comply with certain requirements relating to, for example: the timing, manner, and content of an initial notification of a benefit determination; the process for a claimant to administratively appeal an adverse benefits determination; and the timing for a plan administrator to notify a claimant of its decision on appeal. *Id.* § 2560.503-1(b)(1), (f)–(i). These procedural requirements for a full and fair review "serve two complementary purposes." *Ellis v. Metro. Life Ins. Co.*, 126 F.3d 228, 236 (4th Cir.

---

[4] Relevant here, "adverse benefit determination" means "[a] denial, reduction, or termination of, or a failure to provide or make payment (in whole or in part) for, a benefit, including any such denial, reduction, termination, or failure to provide or make payment that is based on a determination of a participant's or beneficiary's eligibility to participate in a plan[.]" 29 C.F.R. § 2560.503-1(m)(4)(i).

1997). On the one hand, "[t]hey are designed to permit a plan's administrator to resolve disputes in an efficient, streamlined, non-adversarial manner." *Id.* And on the other, they protect claimants from "arbitrary or unprincipled decision-making." *Id.*

In the late 1990s, the Secretary recognized that "speedy decisionmaking is a crucial protection for claimants who need . . . the replacement income that disability benefits provide[,]" ERISA; Rules and Regulations for Administration and Enforcement; Claims Procedure, 65 Fed. Reg. 70,246, 70,247 (Nov. 21, 2000), and therefore specified certain requirements for disability benefits plans. As for timing, a claimant for disability benefits has 180 days to internally appeal an adverse benefits determination to the plan administrator (sometimes referred to as an "internal appeal"). 29 C.F.R. § 2560.503-1(h)(3)(i), (4). Once a claimant files an internal appeal, the administrator must ordinarily issue a decision within 45 days.[5] *Id.* § 2560.503-1(i)(1)(i), (3)(i). That 45-day period can be extended up to another 45 days (for a total of 90 days to decide the appeal) if the plan administrator: (a) "determines that special circumstances . . . require an extension of time for processing the claim"; *and* (b) provides the claimant, within the initial 45-day period, with written notice that indicates (i) "the special circumstances requiring an extension of time" *and* (ii) "the date by which the plan expects to render" a decision. *Id.* § 2650.503-1(i)(1)(i).

---

[5] The clock begins when a claimant files an internal appeal regardless of "whether all the information necessary to make a benefit determination on review accompanies the filing." 29 C.F.R. § 2560.503-1(i)(4). But if a claimant fails to submit the necessary information, the period for the administrator to issue its decision is tolled from the time it notifies the claimant of the need for additional information until the claimant responds to that request. *Id.*

Coupled with a plan administrator's duty to provide reasonable claim resolution procedures—such as timely deciding an internal appeal—is the claimant's obligation to follow and exhaust other applicable procedures before bringing an action for wrongful denial of benefits under 29 U.S.C. § 1132. *Wilson v. UnitedHealthcare Ins. Co.*, 27 F.4th 228, 241 (4th Cir. 2022). But what is a claimant supposed to do if the plan administrator's deadline passes and it has yet to issue a decision?

For about the first 25 years that ERISA was in effect, the answer was unsettled. In the late 1990s, after concluding that "claimants should not be required to continue to pursue claims through an administrative process that fails to meet the minimum standards of the regulation[,]" ERISA; Rules and Regulations for Administration and Enforcement; Claims Procedures, 63 Fed. Reg. 48,390, 48,397 (Sept. 9, 1998), the Secretary amended the regulatory mandates and "radically overhauled" the claims regulation, *Fessenden v. Reliance Standard Life Ins. Co.*, 927 F.3d 998, 1002 (7th Cir. 2019) (Barrett, J.). Relevant here, a new subsection (l) addressed a plan administrator's "[f]ailure to establish and follow reasonable claims procedures[,]" 29 C.F.R. § 2560.503-1(l) (2002), providing:

> [I]n the case of the failure of a plan to establish or follow claims procedures consistent with the requirements of this section, a claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under section 502(a) of the Act on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim.

Subsection (l) was amended again in 2016. Because "disability and lost earnings impose severe hardship on many individuals," Claims Procedure for Plans Providing Disability Benefits, 81 Fed. Reg. 92,316, 92,317 (Dec. 19, 2016), the Secretary bifurcated

11

subsection (l), creating a heightened compliance standard applicable only to "[p]lans providing disability benefits[,]" 29 C.F.R. § 2560.503-1(l)(2) (2017), and leaving that subsection unchanged for other ERISA-governed plans, *id.* § 2560.503-1(l)(1). For disability benefits claims filed on or after April 1, 2018, plan administrators must "strictly adhere" to the claims processing regulations—such as those governing timing. *Id.* § 2560.503-1(l)(2)(i), (p)(3). If a plan does not do so, then, subject to a narrow *de minimis* exception, "the claimant is deemed to have exhausted the administrative remedies available under the plan," and is "entitled to pursue any available remedies under section 502(a) of [ERISA] on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim." *Id.* § 2560.503-1(l)(2)(i). If the claimant opts to pursue those remedies in court, then "the claim . . . is deemed denied on review without the exercise of discretion by an appropriate fiduciary." *Id.*

## B.

With that regulatory framework in mind, we first address whether Reliance timely decided Cogdell's internal appeal. Preliminarily, Reliance does not challenge the validity of the timing provisions in the claims procedure regulations implementing the "full and fair review" requirement in 29 U.S.C. § 1133(2). Oral Argument at 06:00–06:22. Those regulations require a plan administrator to decide an internal appeal "not later than" 45 days after it is received. 29 C.F.R. § 2560.503-1(i)(1)(i), (3)(i). A plan administrator can extend that period up to another 45 days only if it determines "special circumstances" necessitate an extension. *Id.* Even then, the plan administrator must provide "written

12

notice" to the claimant that "indicate[s] th[ose] special circumstances" and the date that it expects to issue a decision.[6] *Id.*

Cogdell filed her internal appeal on August 15, 2023, meaning that, absent an extension, Reliance had 45 days (or until October 1) to issue a decision. It is undisputed that Reliance did not issue a decision by that date. But Reliance argues that it invoked the 45-day extension—postponing its deadline to November 13—in a September 25 letter to Cogdell. In its view, that act made its later October 26 decision timely. In the September 25 letter, Reliance stated that it intended to take beyond 45 days to decide the appeal but did not provide the date it expected to do so. The sole explanation for the extension was that Reliance was "await[ing] the completion" of an "independent physician review" it had requested. J.A. 204–05. It did not say that review was a special circumstance, nor did it explain how it could be one.

The district court rejected Reliance's argument that it properly invoked the 45-day extension, concluding that Reliance had only the initial 45 days to decide Cogdell's internal

---

[6] Following the regulation, the language of the Plan also includes the 45-day deadline, subject to a potential extension up to 45 days if special circumstances exist:

> We will advise the Insured of the results of our review within 45 days after we receive the Insured's timely request for review, unless it is determined that special circumstances require an extension of time for processing the appeal. If it is determined that an extension of time for processing is required, we will give the Insured written notice of the extension prior to the termination of the initial 45-day period. In no event will such extension exceed a period of 45 days from the end of the initial period. The extension notice shall indicate the special circumstances requiring an extension of time and the date by which the determination on review is expected to be made.

J.A. 66.

appeal because no special circumstances justified an extension. *See Cogdell*, 748 F. Supp. at 397–99. On appeal, Reliance argues that the district court erred because, in its view, so long as a plan administrator determines special circumstances exist, that finding in and of itself is sufficient.

The claims regulations do not define "special circumstances," giving little guidance as to what it means beyond one example—"the need to hold a hearing, if the plan's procedures provide for a hearing."[7] 29 C.F.R. § 2560.503-1(i)(1)(i). Without further definitional clarity, we "begin our interpretation of the regulation with its text[.]" *Green v. Brennan*, 578 U.S. 547, 553 (2016). And because the text is clear, our analysis ends there too. *See id.*

"Special" commonly refers to something "out of the ordinary" or "unusual." 2 Shorter Oxford English Dictionary 2945 (5th ed. 2002). So, a circumstance is "special" in the context of the claims regulation if it does not regularly arise in an internal appeal from the denial of benefits. Put another way, a circumstance is not "special" if it is commonplace in the appeals process.[8]

---

[7] A question arose at oral argument regarding the appropriate standard of review for a plan administrator's special circumstances determination. So as long as the administrator exercises its fiduciary authority within the parameters established by the plan, ERISA, and its regulations, a court will review that determination for abuse of discretion.

[8] Although "special circumstances" is plain and unambiguous, and deference to an agency's interpretation of its own regulation is therefore not implicated, *see Kisor v. Wilkie*, 588 U.S. 558 (2019), we observe that our interpretation is consistent with the Secretary's understanding of special circumstances, as articulated in the preamble to the claims regulation:

(Continued)

14

Applying this framework, we hold that there were no special circumstances here. Reliance points only to the new records Cogdell submitted with her internal appeal and the need to have those records reviewed by "appropriate medical specialists" to ensure a "full and fair review[.]" Opening Br. 30. But that does not explain why this event is not "ordinary" or is in any way "unusual," so as to be a "special circumstance." In fact, ERISA regulations seem to contemplate both these events as routine parts of most internal appeals.

The claims regulations not only envision that a claimant will submit more documents and records when appealing an adverse benefit determination—they *require* plans to provide claimants with the opportunity to do so as part of their reasonable claims procedures. *See* 29 C.F.R. § 2560.503-1(h)(2)(ii), (4) (providing that a plan's claims procedures must provide a claimant with "a reasonable opportunity for a full and fair review of a[n] . . . adverse benefit determination" and the plan must "[p]rovide [c]laimants the opportunity to submit written comments, documents, records, and other information

---

In providing a limited extension opportunity for deciding group health and disability claims, it is the Department's intention to provide plans with the flexibility necessary to handle all claims appropriately, whether such claims are easy or difficult, complete when filed or needing more information. *The Department emphasizes that the time periods for decisionmaking are generally maximum periods, not automatic entitlements.* If a specific claim presents no difficulty whatsoever, it may be unreasonable to delay in deciding that claim until the end of the maximum period; similarly, an extension may be imposed only for reasons beyond the control of the plan. For example, the Department would not view delays caused by cyclical or seasonal fluctuations in claims volume to be matters beyond the control of the plan that would justify an extension.

ERISA; Rules and Regulations for Administration and Enforcement; Claims Procedure, 65 Fed. Reg. at 70,250 (emphasis added).

15

relating to the claim for benefits"). And the Plan here does just that. J.A. 66 (stating that, "[a]s part of the appeal process" Reliance will provide the claimant "with the opportunity to send [it] written comments, documents, records, and other information related to the . . . claim for benefits in conjunction with the . . . timely appeal").

As for the need for an independent professional to review new records on appeal, that is commonplace—and often required—in the internal appeal process. Further, for a disability benefit plan's claims procedures to be reasonable, they *must* provide that the plan administrator will consult with a "health care professional" when "deciding an appeal of any adverse benefit determination that is based in whole or in part on a medical judgment[.]" 29 C.F.R § 2560.503-1(h)(3)(iii), (4).

Given these regulations, if new records or a physician review is a unique factor for a particular reason, the plan administrator must explain why that is so and what makes it a "special circumstance" in its notice to the claimant. In this case, neither the plan administrator nor the record reveal such information. In fact, the timeline of Reliance's processing of Cogdell's internal appeal confirms they were not "special circumstances." The record instead reveals that Reliance's failure to complete its review within 45 days was completely of its own making. Cogdell filed her internal appeal on August 15, 2023, and by August 23, a nurse employed by Reliance had reviewed the newly submitted documents, consulted another clinician about Cogdell's claim and received that clinician's concurrence in her assessment, and recommended the claim be referred for an independent evaluation. In total, it took Reliance eight days to review the new documents and records.

16

But Reliance let the file sit idle for another 27 days until it was referred to the appeals department on September 19. An internal Reliance note from the next day reflects that an extension was necessary "due to late appeal referral." J.A. 116. On September 20, Reliance finally sent a letter to Cogdell acknowledging it had received her internal appeal and stating that it intended to take more than 45 days to issue a decision, but did not identify a "special circumstance" justifying the delay. J.A. 202 ("Please allow this letter to serve as notice of our intention to take beyond 45 days to make a final decision[.]"). Reliance then sent another letter to Cogdell on September 25 stating that it was pursuing an "independent physician review" and that it "inten[ded] to take beyond [45] days to make a final decision, as [it] await[ed] the completion of the [physician review] and/or receipt of the []requested information, if any such information is available for review."[9] J.A. 204–05.

Also on September 25, Reliance referred Cogdell's file to two independent medical professionals, receiving the first report back only four days later, on September 29, and the second six days after that, on October 5. J.A. 26. Reliance forwarded those reports to Cogdell on October 11 for her to provide her input within 14 days. It then issued its final decision upholding the denial of her claim on October 26.

---

[9] Awaiting receipt of additional documents here is not a special circumstance sufficient to justify the 45-day extension. The regulations explicitly contain a tolling provision that provides for an extension of time "due to a claimant's failure to submit information necessary to decide a claim." 29 C.F.R. § 2560.503-1(i)(4). This provision does not apply because Reliance did not *require* Cogdell to submit additional documents; it simply said she Cogdell *could* submit them if she wanted to. Confirming this, on September 20, a Reliance claims analyst emailed Cogdell's counsel asking, "Do you intend to submit any additional information or shall I continue with my review." J.A. 117. Cogdell's counsel responded: "There is no additional information we wish to submit with the appeal." *Id.*

17

Giving Reliance the benefit of the doubt, it took at most 36 days for it to *decide* Cogdell's internal appeal: (a) 6 days for its nurse to review and summarize the new documents and records (8/17–8/23); (b) 5 days for the appeals department to review the record and determine an independent review was necessary (9/19–9/25); (c) 10 days to receive the independent professionals' reports (9/25–10/5); (d) 14 days to allow Cogdell to respond to those reports (10/11–10/25); and (e) 1 day to review those reports and issue a final decision (10/25–10/26). This timeline, drawn from the record evidence, shows that the new medical records Cogdell submitted with her internal appeal and the need for an "independent physician review" were not why Reliance needed more than 45 days to issue its decision. Reliance *could* have completed its review of Cogdell's internal appeal well within the initial 45 days. And, if it could not have, it provided no valid reason for failing to do so.

Reliance has not shown "special circumstances" to justify an extension. Under the plain language of the governing regulations, the submission of new records and need for independent physician review are contemplated in most, and available to all, as part of the internal appeals process. By definition, these are not "special circumstances," absent something more. And nothing "more" appears on this record that would tip the balance from the ordinary review of an internal appeal to "special circumstances" permitting

18

Reliance to invoke an extension. This recognition is fatal to Reliance's argument that it was entitled to another 45 days to issue a decision.[10]

\* \* \*

We hold that Reliance failed to invoke a 45-day extension because, on these facts, no special circumstances justified an extension as a matter of law. Reliance thus had 45 days, or until October 1, 2023, to issue its decision. It indisputably failed to do so.

C.

We now turn to the consequences of Reliance's failure to timely decide Cogdell's internal appeal. Recall that an ERISA-governed plan must "establish and maintain reasonable procedures governing the filings of benefit claims," and that for a plan's claims procedures to be reasonable, it must, among other things, adhere to the regulatory time constraints. 29 C.F.R. § 2560.503-1(b)(1). Since the 2018 amendments took effect, a plan administrator must "strictly adhere" to all regulatory requirements, including the timing provision. *Id.* § 2560.503-1(l)(2)(i). At the outset, we have no trouble concluding that Reliance did not strictly adhere to the regulations because, as discussed above, it did not timely decide Cogdell's internal appeal.

---

[10] The regulations reflect that determining "special circumstances" is not the sole requirement for a 45-day extension, as the administrator "shall" provide written notice to the claimant that "indicate[s] the special circumstances requiring an extension of time *and* the date by which the plan expects to render the determination on review." 29 C.F.R. § 2560.503-1(i)(1)(i) (emphasis added). Reliance never gave Cogdell "the date by which the plan expect[ed] to render [its] determination[.]" *Id.* Arguably, this defect could independently negate Reliance's argument that it properly invoked an extension. However, the district court did not rely on this point. Since we resolve this case on the "special circumstances" issue, we leave the date-certain requirement for resolution in another case on another day.

19

In light of that failure, the claims processing regulations provide two consequences. First, unless a narrow *de minimis* exception applies, "the claimant is deemed to have exhausted the administrative remedies available under the plan . . . [and] is entitled to pursue any available remedies under [29 U.S.C. § 1132]." *Id.* Second, if the claimant opts to pursue those remedies, then "the claim or appeal is deemed denied on review without the exercise of discretion by an appropriate fiduciary." *Id.*

On appeal, Reliance agrees that an untimely decision permits Cogdell to file a lawsuit without exhausting her administrative remedies but argues that it does not affect the applicable standard of review. We certainly agree with Reliance that, because the *de minimis* exception does not apply here,[11] Cogdell's administrative remedies were exhausted on October 1, 2023, and that she timely sought review of her entitlement to benefits in federal court.

However, we disagree with Reliance's argument as to the standard of review on the merits. For the reasons explained below, we hold that there was no exercise of discretion by Reliance as the plan administrator to which deference would be owed. Therefore, the district court was correct to review Cogdell's claim de novo.

---

[11] The *de minimis* exception provides that a claimant does not exhaust administrative remedies due to a plan's failure to strictly adhere to the claims processing regulation *if* the regulatory violation was (i) *de minimis*; (ii) non-prejudicial; (iii) attributable to good cause or matters beyond the administrator's control; (iv) in the context of an ongoing good-faith exchange of information between the administrator and the claimant; and (v) not reflective of a pattern or practice of noncompliance. § 2560.503-1(l)(2)(ii). Although Reliance argues that its late decision did not prejudice Cogdell, it never explains how it was *de minimis*. And even if the violation was *de minimis*, the fact that Reliance alone was responsible for its inability to issue a timely decision means that the violation cannot be attributable to good cause or matters beyond its control.

1.

Congress "left to the courts the development of review standards" in the ERISA context. *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 116 (2008). When discerning the appropriate standard of review, the Supreme Court in *Firestone* observed that because "ERISA abounds with the language and terminology of trust law," "principles of trust law" must guide courts in that task. 489 U.S. at 110–11. In other words, *Firestone* "was essentially an application of the common law of trusts to judicial review of ERISA claim denials." *Gilbertson v. Allied Signal, Inc.*, 328 F.3d 625, 632 (10th Cir. 2003).

Those trust principles "make a deferential standard of review appropriate *when a trustee exercises discretionary powers.*" *Firestone*, 489 U.S. at 111 (citing Restatement (Second) of Trusts § 187 (1959)). "[W]hen trustees are in existence, and capable of acting, a court of equity will not interfere to control them *in the exercise of a discretion vested in them by the instrument* under which they act." *Id.* (quoting *Nichols v. Eaton*, 91 U.S. 716, 724–25 (1875) (emphasis added)); *see also* Restatement (Second) of Trusts § 287 (2007) ("[W]hen a trustee has discretion with respect to the exercise of a power, its exercise [i]s subject to supervision by a court only to prevent abuse of discretion.").

*Firestone* applied these trust law principles to make clear that review for abuse of discretion is appropriate only when (1) the plan confers discretionary authority to the administrator to "determine eligibility for benefits or to construe the terms of the plan"; *and* (2) the administrator *actually exercises* that discretionary authority. *Firestone*, 489 U.S. at 115; *see also Fessenden*, 927 F.3d at 1001 ("[The abuse of discretion] standard reflects deference to *the administrator's exercise of discretion.*" (emphasis added));

21

*Nichols v. Prudential Ins. Co. of Am.*, 406 F.3d 98, 109 (2d Cir. 2005) ("[We] may give deferential review only to actual exercises of discretion."); *Gilbertson*, 328 F.3d at 631 ("[T]o be entitled to deferential review, not only must the administrator be given discretion by the plan, but the administrator's decision in a given case must be a valid exercise of that discretion."). Consequently, the failure of a plan administrator to exercise its discretion in accord with the plan, ERISA, and ERISA's implementing regulations results in de novo review of a benefits determination, not review for abuse of discretion.

2.

The parties agree that the Plan vests discretion in Reliance. *See* J.A. 64 (providing that Reliance, as the "claims review fiduciary," "has the discretionary authority to interpret the [Plan and the insurance policy] and to determine eligibility for benefits"); Opening Br. 24; Resp. Br. 20–22. So the first *Firestone* requirement for applying a deferential standard of review is satisfied.

That leaves the second requirement: whether Reliance as plan administrator effectively exercised that discretion here. Had Reliance never issued a final decision disposing of Cogdell's internal appeal, the answer would clearly be "no" and de novo review would apply. *See Fessenden*, 927 F.3d at 1001 ("[W]hen an administrator fails to render a final decision, there is no valid exercise of discretion to which the court can defer, and it decides de novo whether the insured is entitled to benefits."); *Gritzer v. CBS, Inc.*, 275 F.3d 291, 296 (3d Cir. 2002) ("Where a trustee fails to act or to exercise his or her discretion, de novo review is appropriate because the trustee has forfeited the privilege to apply his or her discretion; it is the trustee's analysis, not his or her right to use discretion

22

or a mere arbitrary denial, to which a court should defer."); *Trs. of Cent. States, Se. & Sw. Areas Health & Welfare Fund v. State Farm Mut. Auto. Ins. Co.*, 17 F.3d 1081, 1083 (7th Cir. 1994) ("Deferential review is appropriate only when the trust instrument allows the trustee to interpret the instrument *and when the trustee has in fact interpreted the instrument.*" (emphasis added)). And Reliance agrees. Opening Br. 33.

Reliance contends that it did issue a final decision upholding its denial of Cogdell's claim on October 26—even though that was more than three weeks after the 45-day deadline. Reliance argues that the October 26 decision was nonetheless a valid exercise of discretion for two reasons, and that the district court should have afforded it deference. We disagree.

a.

First, Reliance argues that its late decision makes this case different from those that have held that a plan administrator forfeits discretionary review when it simply fails to decide an internal appeal. This is in essence a substantial compliance argument—Reliance ultimately issued a decision, it was just 25 days late. No harm, no foul? We think not.

It's true that, as Reliance points out, we have held that "substantial compliance with the spirit of the regulation will suffice, for not all procedural defects will invalidate a plan administrator's decision." *Ellis*, 126 F.3d at 235 (cleaned up). "Substantial compliance exists where the claimant is provided with 'a statement of reasons that, under the circumstances of the case, permitted a sufficiently clear understanding of the administrator's position to permit effective review.'" *Id.* (quoting *Brogan v. Holland*, 105 F.3d 158, 165 (4th Cir. 1997)). But we have not located, and Reliance has not cited, a single

23

case where we have applied the substantial compliance doctrine to the failure to observe the affirmative requirements of ERISA's timing regulations or the provisions of the Plan. To the extent Reliance asks us to do so here, we decline.

*Firestone* provides that we apply the trust law principle that "a court of equity will not interfere to control [trustees] in the exercise of a discretion vested in them by the instrument under which they act." *Firestone*, 489 U.S. at 111 (cleaned up). But the ERISA regulations impose enforceable requirements on ERISA plans, and the Plan places temporal limits on Reliance's ability as plan administrator to exercise its discretion. Consequently, the failure to follow the Plan's time restraints negates the discretion that would otherwise be due. All that's to say, both the ERISA regulation and the Plan required Reliance to decide Cogdell's internal appeal within 45 days. Because "[d]ecisions made outside the boundaries of conferred discretion are not exercises of discretion," *Jebian v. Hewlett Packard Co. Emp. Benefits Org. Income Prot. Plan*, 349 F.3d 1098, 1104 (9th Cir. 2003), Reliance's failure to issue a decision within the 45 days meant it failed to exercise its fiduciary discretion. A late decision, absent unusual circumstances not present here, is not entitled to deference because Reliance lacks the authority to take longer than the regulations and the Plan permit.[12] *See Fessenden*, 927 F.3d at 1004.

---

[12] Reliance argues that *Fessenden* is inapposite because here Reliance decided Cogdell's internal appeal within 90 days of receiving Cogdell's request for review, while the decision in *Fessenden* was issued after the 90-day window closed. This is a distinction without a difference for present purposes because Reliance was only entitled to 45 days to begin with. When operating within a fiduciary world in which an administrator has only 45 days in which to act, its decision on day 72 is just as untimely as one on day 92. Neither are valid exercises of fiduciary discretion.

24

A plan administrator's compliance with rules conditioning the exercise of its discretion is fundamentally different from an administrator's compliance with rules about its substantive exercise of that discretion. As to the former, compliance either exists or it does not—those form the boundaries within which it can exercise its discretion. As to the latter, it has leeway to exercise discretion within those boundaries.

This case illustrates that distinction. Along with her request for an internal appeal, Cogdell submitted new records and documents to Reliance to support her claim. Once Reliance failed to timely issue its decision, Cogdell's claim was deemed denied and she was entitled to seek judicial review. *See id.* § 2560.503-1(l)(2)(i). At that point, however, Cogdell had no explanation from Reliance about how it reviewed her claim on appeal. Thus, she could not "prepare an appeal for further administrative review or recourse to the federal courts." *Ellis*, 126 F.3d at 237. And when Cogdell sued, still with no decision, the district court could not "perform the task, entrusted to [it] by ERISA, of reviewing a claim denial[,]" *id.*, because there was *nothing* to review. Instead, "[t]he district court was presented with a claim for benefits based on evidence that, for all [Cogdell] and the court knew, Reliance had not yet considered, and had certainly not accounted for in any decision on [Cogdell]'s claim."[13] *Fessenden*, 927 F.3d at 1005.

---

[13] A fortiori, we reject Reliance's argument that it exercised its discretion when it denied Cogdell's claim initially (before the internal appeal) and that the district court should have afforded that decision deference. Opening Br. 39. To do so would essentially negate the internal appeal process. After all, "[t]he purpose of the ERISA mandated appeal process is an important one. That process enables a claimant who is denied benefits to have an impartial administrative review, but also make an administrative record for a court review if that later occurs." *Gagliano v. Reliance Standard Life Ins. Co.*, 547 F.3d 230, 235 (4th Cir. 2008). The initial decision is therefore of no relevance here.

As then-Judge Barrett explained in *Fessenden*:

> Reliance's position that an administrator can change the standard of review with a late-breaking decision would therefore be a novel application of the substantial compliance doctrine. And permitting that novelty would undercut the benefits of exhaustion for claimants. A claimant is entitled to sue as soon as a claim is deemed exhausted because the administrator has failed to make a timely decision. But Reliance's position would leave such a claimant in an uncertain position. Should she wait a little bit longer just in case the administrator makes a decision? Or should she go ahead, attempting to frame her case in a way that is responsive to a decision that hasn't yet—but may still—come?

*Id.* Like the Seventh Circuit, we conclude that the substantial compliance doctrine is incompatible with the applicable ERISA time restraints.[14] *Id.* at 1004–05.

---

[14] Accordingly, many cases *Reliance* cites are unpersuasive. For example, Reliance urges us to adopt the Eighth Circuit's holding in *McIntyre v. Reliance Standard Life Insurance Co.*, 73 F.4th 993, 999 (8th Cir. 2023), that a "procedural irregularity" does not strip a plan administrator of its discretionary authority, but is "one of many factors" to consider when determining whether an administrator abused its discretion. Of critical distinction, the claim in *McIntyre* was filed before January 1, 2021, *id.* at 998, and therefore was not subject to the amended subsection (l) which now requires strict adherence. To the extent this rule still applies in the Eighth Circuit, it is inconsistent with our conclusion above that one cannot substantially comply with a regulatory time deadline in most circumstances. The Ninth Circuit's holding in *Jebian*—that "inconsequential violations of the deadlines would not entitle the claimant to *de novo* review, in the context of an ongoing, good faith exchange of information between the administrator and the claimant[,]" 349 F.3d at 1107 (cleaned up)—is unpersuasive for the same reason. The same goes for the Fifth Circuit's decision in *Southern Farm Bureau Life Insurance Co. v. Moore*, which merely stated with no discussion or explanation that "the standard of review is no different whether the claim is actually denied or is deemed denied." 993 F.2d 98, 101 (5th Cir. 1993).

Having resolved the timeliness issue, we need not address today whether the substantial compliance doctrine could still apply in other circumstances.

26

b.

Reliance next invokes the Supreme Court's recent decision in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024),[15] to argue that the 2018 amendment to subsection (l) was an impermissible exercise of the Secretary's rulemaking authority. In particular, it challenges 29 C.F.R. § 2560.503-1(l)(2)(i), which provides that if a claimant opts to seek review of an entitlement to benefits in federal court, the claim is "deemed denied on review without the exercise of discretion by an appropriate fiduciary."[16] According to Reliance, even though ERISA does not grant the Secretary the authority to do so, that provision "sets forth the *judicial consequences* of a fiduciary's failure to follow the procedures by specifically revoking discretion." Opening Br. 33 (emphasis in original). We find no merit in this argument.

Reliance appears to argue that its untimely decision would otherwise be entitled to deferential review but for that one provision in subsection (l). As demonstrated by our lengthy discussion above, however, our holding as to the applicable standard of review—that de novo review is necessary because Reliance did not timely decide Cogdell's internal appeal—is not mandated by subsection (l)(2)(i), but by *Firestone* and the principles of trust law we must consider when determining the appropriate standard of review. *Firestone*, 489 U.S. at 110–11. Subsection (l) simply says that a certain set of circumstances leads to a

---

[15] In *Loper Bright*, the Supreme Court held that courts may not defer to an agency's interpretation of a statute simply because a statute is ambiguous. 603 U.S. at 413.

[16] As far as we can tell, Reliance does not challenge other portions of subsection (l), such as those requiring strict adherence to the claims processing regulations and addressing when a claimant exhausts administrative remedies.

27

certain result. It does not, however, invade the role of courts in setting the standard of review.[17] We need not decide whether the Secretary exceeded the broad express delegation of authority to promulgate regulations by dictating standards of review because subsection (l) does not do so. *Loper Bright* is simply inapplicable here.[18]

\* \* \*

---

[17] The Department of Labor recognized as much when promulgating subsection (l):

> The Department does not intend to establish a general rule regarding the level of deference that a reviewing court may choose to give a fiduciary's decision interpreting benefit provisions in the plan's governing documents. However, the cases reviewing a plan fiduciary's decision under a deferential arbitrary or capricious standard are based on the idea that the plan documents give the fiduciary discretionary authority to interpret the plan documents. By providing that the claim is deemed denied without the exercise of fiduciary discretion, the regulation relies on the regulatory authority granted the Department in ERISA sections 503 and 505 and is intended to define what constitutes a denial of a claim. *The legal effect of the definition may be that a court would conclude that de novo review is appropriate because of the regulation that determines as a matter of law that no fiduciary discretion was exercised in denying the claim.*

Claims Procedure for Plans Providing Disability Benefits, 81 Fed. Reg. at 92,327–28 (emphasis added).

[18] *Loper Bright* is all the more not in play here since ERISA's grant of authority to the Secretary is exceptionally broad: "ERISA empowers the Secretary of Labor to 'prescribe such regulations as he finds necessary or appropriate to carry out' the statutory provisions securing employee benefit rights." *Black & Decker*, 538 U.S. at 831 (quoting 29 U.S.C. § 1135); *see* 29 U.S.C. § 1133(2) (requiring an employee benefit plan to, "[i]n accordance with regulations of the Secretary . . . afford a reasonable opportunity to any participant whose claim for benefits has been denied *for a full and fair review* by the appropriate named fiduciary of the decision denying the claim" (emphasis added)); *see also Midthun-Hensen ex rel. K.H. v. Grp. Health Coop. of S. Cent. Wisc., Inc.*, 110 F.4th 984, 988 (7th Cir. 2024) ("ERISA authorizes rulemaking, *see* 29 U.S.C. § 1135, and we need not address how *Loper Bright* . . . applies to regulations adopted under an express delegation."). Likewise, we see no ambiguity in those express and plain grants of authority which do not implicate the very basis of *Loper Bright*: that courts cannot defer to an agency's interpretation of an ambiguous statute. *See* 603 U.S. at 413.

A court will review a plan administrator's decision regarding a claimant's entitlement to benefits for abuse of discretion *only* if the plan confers discretion to the administrator and the administrator exercises that discretion in accordance with the plan, ERISA and its regulations. ERISA's regulations define the extent to which an administrator can exercise that authority, meaning that an administrator cannot exercise its discretion when it fails to meet regulatory deadlines. Without an exercise of discretion, there is no discretionary act to which deference is owed, and a federal court in that circumstance should review de novo whether a claimant is entitled to benefits.

The terms of the Plan and the claims regulation provide that Reliance had 45 days to decide Cogdell's internal appeal. Those 45 days came and went with no decision from Reliance. There was no exercise of discretion, much less a discretionary act to which the district court could defer. Thus, the district court correctly reviewed de novo whether Cogdell was entitled to benefits under the Plan.

### D.

With the threshold arguments relating to the district court's standard of review now resolved, we turn to the merits of Cogdell's claim. We review a district court's decision following a de novo review of a claimant's entitlement to benefits under a mixed standard of review—factual findings for clear error and conclusions of law de novo. *Tekmen*, 55 F.4th at 964. The district court concluded that Cogdell was entitled to benefits under the Plan. Finding no error in either the district court's findings of facts or legal conclusions, we reject Reliance's contrary arguments and affirm the award of benefits to Cogdell.

29

Reliance first argues that the district court erroneously evaluated Cogdell's claim based on her specific job at MITRE rather than the duties of her "regular occupation." Opening Br. 43. We disagree. To be entitled to benefits, the Plan requires Cogdell to have been "Totally Disabled," meaning that "as a result of [a sickness for a specified period she] cannot perform the *material duties of* []*her regular occupation*." J.A. 59 (emphasis added). The Plan, however, does not define "regular occupation." In that event, the "applicable definition . . . shall be a position of the same general character of the insured's previous job, requiring similar skills and training, and involving comparable duties." *Gallagher v. Reliance Standard Life Ins. Co.*, 305 F.3d 264, 270–71 (4th Cir. 2002) (quoting *Kinstler v. First Reliance Standard Ins. Co.*, 181 F.3d 243, 252 (2d. Cir. 1999)).

The district court relied on a job description in the administrative record for a "Business Process Engineer, Principal" position at MITRE from May 2023 to establish the "material duties" of Cogdell's regular occupation. *Cogdell*, 748 F. Supp. 3d at 399–400. According to Reliance, this was error because the job description says nothing about the physical or cognitive requirements. It further argues that because some of the medical records show that Cogdell can physically perform "light work," the district court should have more broadly considered whether Cogdell could essentially perform "all the material duties of her regular occupation"—which Reliance argues is a "sedentary role." Reliance also cites its internal vocational rehabilitation specialist's reliance on the Dictionary of Occupational Titles ("DOT") entry for "consultant," which lists generic and broad tasks, i.e., "conducts study or survey on need or problem to obtain data required for solution." Opening Br. 46 (citing J.A. 384–86).

30

As the fact finder, and owing no deference to Reliance, the district court reasonably identified Cogdell's occupation and its associated duties. The court was entitled to credit the job description (posted to backfill Cogdell's position) and other evidence in the record (such as Cogdell's resume and statements) to ascertain those "material duties." *Gallagher*, 305 F.3d at 270–71; *Tekmen*, 55 F.4th at 961 (describing de novo review). Nor did the court clearly err in not crediting the DOT entry for "Consultant" as many of the broad tasks it listed do not "involve comparable duties" to the work Cogdell performed in her role at MITRE. *See Gallagher*, 305 F.3d at 272 ("A general job description of the DOT, to be applicable, must involve comparable duties but not necessarily every duty."). Lastly, Reliance's argument that a sedentary task finding compels a denial of benefits relies on a fallacy: "sedentary occupations require a certain physical capacity, you are capable of meeting those physical requirements, your regular occupation is sedentary, therefore you can perform your occupation." *Ward v. Reliance Standard Life Ins. Co.*, No. 23-2147, 2024 WL 3206709, at *7 (D. Md. June 21, 2024). This reasoning leaves out any consideration of the cognitive requirements of Cogdell's occupation, which the record shows the district court sufficiently (and correctly) considered. At bottom, there is sufficient evidence to support the district court's assessment of Cogdell's "regular occupation."

Reliance next argues that the district court erred by not considering the reports from the two independent medical professionals that Reliance received after Cogdell's claim was deemed denied and she filed suit. When, as here, a district court reviews a claimant's entitlement to benefits de novo, we have instructed that it "should review only the evidentiary record that was presented to the plan administrator" unless it determines "that

31

additional evidence is necessary for resolution of the benefit claim." *Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1026–27 (4th Cir. 1993). We again disagree with Reliance.

The district court expressly recognized the applicable standard and declined to exercise its discretion to consider additional evidence when it noted that, "absent exceptional circumstances," it was to look "only to the evidence in the administrative record presented by the claimant at the time the claim was administratively exhausted." *Cogdell*, 748 F. Supp. 3d at 404. We see no abuse of discretion in the district court's decision not to consider evidence that the claims processing regulations required be provided to Cogdell with an opportunity to respond within the appeals period because the evidence was not provided until after the claim was deemed denied, leaving Cogdell with no opportunity to respond. *See* 29 C.F.R. § 2560.503-1(h)(4)(i). Had Reliance processed Cogdell's internal appeal in a timely manner, those reports could have been part of the administrative record. But as discussed above, it did not and the district court did not err by not considering them.

Last, Reliance argues that the district court impermissibly applied a "treating physician" rule, assigning more weight to certain reports from Cogdell's treating physicians. But "district courts are institutionally assigned the role of finder of fact" and that role encompasses "assessing credibility and determining the appropriate weight to assign evidence." *Tekmen*, 55 F.4th at 961. We held in *Tekmen* that when "the district court determines that the accounts of treating physicians are more persuasive than those of physicians who only examined a paper record, it is not error for the district court to assign

32

those opinions more weight." *Id.* at 966. Although Reliance may dispute the weight of the evidence, given the district court's extensive review of the record evidence that supports its conclusion that Cogdell was "Totally Disabled," Reliance has failed to show anything that would leave this Court "with the definite and firm conviction that a mistake has been committed." *Id.* at 964.

Having otherwise reviewed the district court's merits determination and seeing no error, we reject Reliance's remaining arguments, *see, e.g.*, Reply Br. 20–24, and will affirm the district court's decision.

## IV.

For the reasons discussed above, the judgment of the district court is

*AFFIRMED.*

33